# IN THE COURT OF APPEALS OF IOWA

No. 15-1828
Filed August 17, 2016

IN RE THE MARRIAGE OF LORI A. HELLESO
AND RYAN W. HELLESO

Upon the Petition of
LORI A. HELLESO, n/k/a LORI A. BUERKLEY,
      Petitioner-Appellee,

And Concerning
RYAN W. HELLESO,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Carla Schemmel, Judge.

Ryan Helleso appeals the district court's denial of his application to modify the child custody provisions of the parties' dissolution decree, increase of his child support obligation, and denial of his application for show cause. **AFFIRMED.**

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant.

Stephen J. Banks of the Banks Law Firm, P.C., Waukee, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Ryan Helleso appeals from the denial of his application to modify the May 2012 dissolution decree, increase in his child-support obligation, and denial of his application to show cause.

"The modification of a dissolution decree requires a showing of a change in circumstances since the date of the decree which substantially relates to the welfare of the children and which was not within the contemplation of the parties and the court at the time the decree was entered." *In re Marriage of Wagner*, 272 N.W.2d 418, 421 (Iowa 1978). "The party seeking to modify a dissolution decree thus faces a heavy burden, because once custody of a child has been fixed, 'it should be disturbed only for the most cogent reasons.'" *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted). A parent seeking to modify the custody provisions of a decree must not only show a change of circumstances but also that the moving party can offer "superior care." *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

We review equitable matters such as an application to modify the physical care provisions of a dissolution decree de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We are not bound by the trial court's findings, but given the trial court's more advantageous position to view the witnesses and assess their credibility, we give its findings deference. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

Lori Helleso, now known as Lori Buerckley, and Ryan Helleso are the parents of four minor children, B.H. (born in 2002), R.H. (born in 2005), E.H. (born in 2008), and C.H. (born in 2009). The parties have been twice married to

each other and divorced. The most recent marriage of the parties was dissolved by stipulated decree on May 31, 2012.

In 2014, Lori married Ben Buerckley, who has two children, and lives in Milo, Iowa. At the time of the modification action, Lori had not moved her family to the Milo residence because Ryan objected and she awaited the court's ruling. Ryan is living with his girlfriend, Erin McNamara, and three of her four children in Grimes, Iowa.

Lori was diagnosed as being bipolar with personality disorder in 2002. In February 2012, prior to the entry of the May 2012 decree, Lori was taken by Ryan to the hospital emergency room. During that visit, her blood pressure was low and she was told to immediately discontinue her medications, including her psychiatric medications. Lori was also told to follow-up with her counselor concerning her mental health treatment and prescriptions. Lori has not taken any medications for her mental illness since 2012.

When Ryan vacated the Des Moines family residence in December 2011, Ryan's disabled father remained in Lori's care. Thus, with Ryan's consent, Lori was caring for the parties' four children, Lori's older child from another marriage, and Ryan's father. In the 2012 stipulated decree, Lori and Ryan were granted joint legal custody. Lori was granted physical care of the four children. Parenting time for Ryan was set out. At the time of the May 2012 decree, Lori's income (solely from disability) was $15,744 per year, Ryan's was about $50,000 per year, and Ryan's child support was set at $1237.24 per month for four children.

On August 5, 2014, Ryan filed an application to modify the custody provisions of the dissolution decree, asserting Lori's failure to continue taking her

mental-health medication constituted a substantial change of circumstances. Ryan also complained of Lori's move to Milo (about thirty miles southeast of Des Moines) with her new husband. He asked that the children be placed in his physical care in Grimes (about fifteen miles northwest of Des Moines). Lori resisted. Both parties also had earlier filed contempt actions accusing the other of violating the 2012 dissolution decree.

On August 4, 2014, the parties signed a mediation agreement that modified the visitation provisions of the decree. A second mediation did not result in an agreement.

Following a multi-day trial, the district court denied both applications to modify custody. The court ruled that because Lori's psychiatric conditions were known at the time of the dissolution, and Lori's discontinuation of her mental health medication had not resulted in adverse treatment or care of the children, there was not a change of circumstances warranting a modification of the custody provisions of the decree.

The district court did not discuss Lori's move in its ruling. Ryan filed a motion to modify or enlarge findings, asking that the court

> amend or enlarge and reconsider its findings so that based on the move to Milo the visitation schedule should change. The court did not list the disruption of moving the children from their home or to a new school district. [Ryan] requests that custody be changed so that the children can go to school in Grimes or at a minimum change to the schedule that was recommended by the Guardian Ad Litem [(GAL)]. [Ryan] respectfully requests that the court should adopt verbatim the recommendation of the [GAL] regarding a visitation schedule due to the fact that Lori did move to Milo.

The trial court denied the motion to reconsider.[1]

On appeal, Ryan contends the trial court should have modified the decree due to Lori's non-treatment of her bipolar condition and her move. We do not find his characterization of Lori's mental health deficiencies supported by our independent review of the record. Lori's condition was known at the time of the dissolution, at which time she was not taking medication. We must assume Ryan considered Lori's condition when he entered into the stipulation granting Lori physical care of the children. *See Wagner*, 272 N.W.2d at 421. We observe that Ryan also left his disabled father in Lori's care at the time of the dissolution and moved out of state shortly after the dissolution was filed. Ryan must have been confident in Lori's ability to care for all of her charges.

Lori's primary medical provider, Physician's Assistant William Andrews, testified he had provided care for Lori and her children for several years. He did not have concerns about the children's health or cleanliness. He knew of Lori's bipolar diagnosis and that she was not taking medication currently. Andrews testified he had observed no manic or depressive symptoms in his dealings with Lori. Ryan's complaints that the children's care has been neglected due to Lori's mental health condition are not borne out by the testimony of the school nurse either. A GAL report that suggested Ryan would provide better care than Lori is not particularly helpful in light of the fact that the GAL did not have a full

---

[1] At the time of the modification action, Ryan's income had increased to $65,956.80 per year. The child support guidelines indicated his support obligation with such earnings is greater than a ten-percent deviation, which constitutes a substantial change of circumstances warranting modification. *See* Iowa Code § 598.21C(2) (2013). The court set Ryan's child support at $1637.53 for four children, which was to be reduced to $1454.28 for three children, reduced to $1245.36 for two children, and reduced to $861.49 for one child "as discussed in the prior decree."

understanding of Ryan's own mental health history, his relatively recent bout with anxiety and depression, and his own discontinuation of medication. Nor do we find Lori's contemplated move to reside with her husband is for "no good reason" as suggested by Ryan. While Iowa law considers a relocation of 150 miles or more a substantial change of circumstances, *see* Iowa Code § 598.21D, that provision is not implicated here. Upon our de novo review of the record, we find no reason to disturb the court's denial of the application to modify child custody as there has been no change of circumstances not contemplated by the decretal court.

We also find no gross abuse of discretion in the trial court's rejecting both parties' applications to show cause. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995) ("We hold the trial court here had broad discretion and 'unless this discretion is grossly abused, the [trial court's] decision must stand.'" (citation omitted)). Here, the trial court ruled:

> [T]he court is unable to find the willful disregard needed for a finding of contempt. Rather, both parties in this case have failed to cooperate in achieving the goals contained in the decree related to agreeing on how to make decisions concerning [the children] together. This behavior, particularly since much of it was done in reaction to the behavior of the other party, does not rise to the necessary level needed for a finding of contempt against either party.

Ryan contends this ruling was erroneous.

When a trial court refuses to hold a party in contempt pursuant to Iowa Code section 598.23, our review is not de novo. *In re Marriage of Hankenson*, 503 N.W.2d 431, 433 (Iowa Ct. App. 1993). The district court has "broad discretion" and "may consider all the circumstances, not just whether a willful

violation of a court order has been shown, in deciding whether to impose punishment for contempt in a particular case." *Swan*, 526 N.W.2d at 327. "[A] trial court is not required to hold a party in contempt even though the elements of contempt may exist." *Id.*

We adopt this language of the trial court:

[S]ince Ryan returned to Des Moines and began wanting more time with the children, the parties have displayed an inability to work together or agree on matters related to the children. While the court finds both parties love the children and are able individually to take care of them, the court also finds both parties less than credible in much of their testimony with each choosing to attack the other parent rather than tell the truth on various issues. They also have both displayed a complete inability to abide by the[ ] . . . parenting, custody, and visitation[ ] [provisions] of their decree. Rather, they have both repeatedly tried to negotiate changes to modify application of the provisions in the decree in favor of themselves, and then blame[ ] [the] other for failing to cooperate. Ryan has been more guilty of this than Lori, which unfortunately has led Lori to avoid talking to Ryan, including about matters related to the children. These parties have been able to use their "communications" with each other as a weapon against the other, rather than as a process to fairly resolve issues about the children for the benefit of those children.

We do not find an abuse of discretion in the trial court's denial of Ryan's application to show cause. We therefore affirm the district court in all respects.

We add that although the parties are free to temporarily deviate from the visitation terms (and are encouraged to do so when it is in the children's best interests), along with that flexibility there must be reasonable notice and the other's consent. Without consent, the terms as previously ordered control.

Both parties to this action would also be well advised to give consideration to the best interests of the children in their efforts to co-parent their children. They have both performed poorly in consulting with each other, and have yet to

develop a working relationship to parent their children without constant minor disagreements. Disengaging their emotions and avoiding blaming the other can improve communications.

Lori has sought an award of appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). In light of our affirmance and Ryan's substantially greater income, we award Lori $2500 in appellate attorney fees.

Costs are assessed to Ryan.

**AFFIRMED.**