# IN THE COURT OF APPEALS OF IOWA

No. 16-0107
Filed January 11, 2017

IN RE THE MARRIAGE OF ANGELA RENEE JOHNSTON AND
JEREMY JAMES JOHNSTON

Upon the Petition of
ANGELA RENEE JOHNSTON,
     Petitioner-Appellant,

And Concerning
JEREMY JAMES JOHNSTON,
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Audubon County, Jeffrey L. Larson,

Judge.


     Angela Johnston appeals from the district court orders dismissing her

application for contempt and denying her application for declaratory judgment.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


     Joel C. Baxter of Wild, Baxter & Sand, P.C., Guthrie Center, for appellant.

     Gregory J. Siemann of Green, Siemann & Greteman, P.L.C., Carroll, and

Jessica A. Zupp of Zupp & Zupp Law Firm, P.C., Denison, for appellee.


     Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

Angela Johnston appeals from the district court orders dismissing her application for contempt and denying her application for declaratory judgment asserting her former husband, Jeremy Johnston, was in contempt for failure to refinance debts and pay her a portion of the proceeds from 2012 corn sales as ordered in the decree of dissolution of marriage. Angela contends the district court orders are illegal because they are not supported by substantial evidence. We find the district court did not err in refusing to find Jeremy in contempt and affirm. We reverse the district court order as to its findings regarding the division of the proceeds from the 2012 corn sales, and remand for entry of an order granting the application for declaratory judgment and for further proceedings.

**I. Background Facts & Proceedings.**

Angela and Jeremey were married in July 2007. Angela filed the petition for dissolution of marriage on December 2, 2012. Trial was held July 16 and 17, 2013, and the district court entered the decree of dissolution of marriage on August 19, 2013. Among other provisions, the decree ordered:

> All corn on hand shall be sold within ninety days after the date of this Decree of Dissolution is filed . . . The debt owing to FSA on the sealed corn shall be paid first from the gross sale proceeds. . . . After the deduction of commissions and hauling expenses, the balance of the sale proceeds from the corn shall be divided equally between Jeremy and Angela. Jeremy and Angela shall be separately responsible for any income taxes due and owing as a result of the sale of the corn.

The court found there were 90,487 bushels of corn on hand. The court also ordered Jeremy to refinance the debt on the marital residence within ninety days of the date of the decree so as to remove Angela's name from that debt.

Jeremy was also ordered to hold Angela harmless as to the debts on a vertical till and his vehicle, 2013 prepaid seed, 2013 operating note, and bin loans.

At an October 2, 2013 hearing on posttrial motions filed by the parties,[1] the district court learned that in February 2013, Jeremy entered into contracts for the sale of 3000 bushels of the 2012 corn crop, ultimately selling 2980.35 bushels and earning a net amount[2] of $16,987.38; and that in June 2013, Jeremy entered into a contract for the sale of 15,000 bushels, selling 14,943.94 bushels and earning a net amount of $83,550.78. The district court also learned Angela had executed a security agreement with Landmands National Bank (Landmands) in February 2013 to secure the bank's security interest in property, including all accounts and other rights to payment, inventory, farm products, and "all rights to crop related income or assets from the 2013 growing season." A check was issued to Jeremy, Angela, and Landmands for the August/September sale of 58,994.60 bushels[3] of the 2012 corn crop in the net amount of $336,070.94. Despite her initial refusal to do so, Angela endorsed the check shortly after the October 2, 2013 hearing. The proceeds of the check were applied to the principal of the debt to Landmands in the amount of $187,710.12 and to the accrued interest in the amount of $5774.50.

On October 15, 2013, the district court entered an order clarifying portions of the dissolution decree. The court acknowledged in the October 15, 2013 order

---

[1] Jeremy filed a motion for the court to take additional evidence on July 29, 2013. On September 3, 2013, Jeremy filed a second motion for additional evidence and a motion to amend the dissolution decree. Also on September 3, 2013, Angela filed a "motion regarding grain sales and proceeds and request for escrow of proceeds with clerk."
[2] The net amount of each sale reflects the amount of funds issued after deductions were taken for payment of the debt owing to the Farm Security Administration (FSA).
[3] Jeremy contracted for the sale of 72,000 bushels.

that Jeremy was "to hold Angela harmless from all debts owing to Landmands National Bank."  The court stated:

> Angela is not a signor on Jeremy's 2013 operating note with the Bank.  Jeremy expects to realize over $741,000 from the 2013 crop.  Jeremy does not intend to share income from the 2013 crop with Angela, and that position is reasonable given the agreement to sever her from the farming operation as of December 31, 2012.  In light of that agreement, it is not equitable that money drawn against the 2013 operating note be deducted from Angela's portion of marital assets.

Despite this understanding, the remaining proceeds from the August/September sale of 2012 corn were put toward Jeremy's 2013 operating loan debt with Landmands.

With respect to the amount of bushels of 2012 corn on hand that were sold, the court stated:

> Jeremy asserted in his motion for court to take additional evidence, which was filed July 20, 2013—twelve days after the trial, that "[t]he parties own 90,487 bushels of corn which is in storage, waiting to be sold."  In his September 3, 2013 motion, Jeremy suggested that there may be as little as 64,771 bushels on hand.  At the October 2, 2013 hearing, Jeremy presented evidence that 3000 bushels of the 2012 corn crop had been sold in February 2013, that 15,000 bushels of the 2012 corn crop had been sold in June 2013, and that 72,000 bushels of the 2012 corn crop had been sold in August 2013.
> While these various numbers and positions reflect on Jeremy's reliability as a witness, the court concludes that Jeremy has sufficiently accounted for the 2012 corn crop.  The three sales during 2013 amount to 90,000 bushels.  Some corn was used for silage and there is a shrinkage factor as the corn dries.  Angela's allegations that corn is missing or was commingled with corn owned by Jeremy's father have not been proven.  The disposition of the 2012 stored corn in the decree of dissolution of marriage is confirmed.

Jeremy filed a petition for bankruptcy on November 12, 2013, and a bankruptcy stay order was entered. The bankruptcy action was dismissed with prejudice on December 22, 2014.

Upon Angela's request for further explanation, the district court entered a February 5, 2014 order, modifying the equalization payment to correct mathematical errors. The February order did not address the 2012 corn crop division. Jeremy appealed, and this court issued an opinion in December 2014, considering issues affecting the equalization payment and lowering the equalization payment amount.

Angela filed the application for contempt and application for declaratory judgment on September 14, 2015. The application for contempt asserted Jeremy was in contempt for failing to pay the mortgage on the martial residence; refinance the marital residence; refinance debts on the vertical till, machine sheds, and grain bins; and pay Angela for her one-half of the 2012 corn crop. The application for declaratory judgment requested the district court to declare Angela's share of the 2012 corn crop amounted to $255,886.10—which would account for the sale of the entire 90,487 bushels of corn—but not less than $218,304.55—one-half of the proceeds from the February, June, and August 2013 corn sales. In two orders entered November 9, 2015, the district court dismissed the application for contempt and denied the application for declaratory judgment. Angela filed a motion to amend and enlarge findings, which was denied by the district court in an order entered December 22, 2015. Angela now appeals.

**II. Standard of Review.**

We employ a unique standard of review in contempt actions. *In re Marriage of Swan*, 526 N.W.2d 320, 326 (Iowa 1995). "If there has been a finding of contempt, we review the evidence to assure ourselves that the court's findings are supported by substantial evidence." *Id.* at 326-27. "A different standard of review exists on appeals from the trial court's refusal to hold a party in contempt under a statute that allows the trial court some discretion." *Id.* at 327. Iowa Code section 598.23(1) (2015) provides "[i]f a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt." Therefore, the trial court is afforded broad discretion and "unless this discretion is grossly abused, the [trial court's] decision must stand." *Swan*, 526 N.W.2d at 327 (citation omitted).

"Our review of actions for declaratory judgment depends upon how the action was tried to the district court." *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). "To determine the proper standard of review, we consider the 'pleadings, relief sought, and nature of the case [to] determine whether a declaratory judgment action is legal or equitable.'" *Id.* (citation omitted).

> Where there is uncertainty, a litmus test we have applied is whether evidentiary objections were ruled on by [the] trial court. If so, the action is one at law. Another indication that the action is a legal one is the parties' filing of motions normally made in legal actions. Further, a trial court generally issues a "decree" in an equitable action and a "judgment" in a legal action.

*Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010) (citations omitted).

Jeremy asserts both parties made, and the district court ruled upon, objections at the hearing on the applications for contempt and declaratory judgment. Thus, Jeremy contends the proper standard of review is for correction of errors at law. Angela does not dispute this assertion. We, therefore, review the district court's denial of the application for declaratory judgment for correction of errors at law.[4] "Under this standard of review, the trial court's findings carry the force of a special verdict and are binding if supported by substantial evidence. We are not, however, bound by the trial court's legal conclusions." *Id.* at 179 (citations omitted). We first review the denial of the application for declaratory judgment.

### III. Order Denying the Application for Declaratory Judgment.

Angela contends substantial evidence does not support the district court's erroneous determination she was paid for her portion of the 2012 corn crop proceeds or that the issue was in some fashion considered by subsequent district court orders or by our prior ruling in *In re Marriage of Johnston*, No. 13-1751, 2014 WL 6977201 (Iowa Ct. App. Dec. 10, 2014).

In the order denying the application for declaratory judgment, the district court stated, "The corn on hand was sold, and the proceeds were divided pursuant to the decree of dissolution." The district court held:

> [T]he district court's dissolution decree and subsequent orders and the court of appeals ruling have dealt with the issue of the parties' grain distribution. This court finds that the sale of the grain and the distribution of those proceeds has been accomplished pursuant to the decree of dissolution and the district court's subsequent orders,

---

[4] In any event, were we to review the order denying the application for declaratory judgment for an abuse of discretion, we would reach the same result.

as well as the court of appeals' opinion. The petitioner's application for declaratory judgment is denied.

Jeremy contends Angela is precluded from bringing claims regarding the division of the 2012 corn crop at this time because the issue has already been addressed by the district court orders and this court on appeal. However, on appeal, this court approved the property and debt division by the district court and only addressed issues affecting the equalization payment. *Johnston*, 2014 WL 6977201, at *6. Specifically, we addressed whether the district court gave appropriate consideration to gifts the parties received and the value of their premarital property. *Id.* at *3. We also considered Jeremy's request to review the district court's declination to liquidate all of the assets. *Id.* at *5.

We acknowledge our court has concluded that crops that constitute "income," even growing crops, are an asset subject to equitable property division pursuant to Iowa Code section 598.21. *In re Marriage of Erpelding*, No. 10-1445, 2011 WL 3480978, at *5 (Iowa Ct. App. Aug. 10, 2011). But it is abundantly clear that the 2012 crop on hand at the time of the dissolution trial was not included in district court's calculation of the equalization payment. We reach this conclusion because the 2012 crop is not identified in the chart calculating the equalization payment in the decree or in the chart in the court's order filed October 15, 2013. The crop was, however, equally awarded to the parties in the decree. And, although we affirmed the entire property division as modified, there is no specific reference or modification of the award of the 2012 crop in our prior ruling. *See Johnston*, 2014 WL 697720, at *1-6.

Moreover, because the 2012 crop was divided equally between the parties, it had no effect on the calculation of the equalization payment under these facts. The division of the 2012 corn crop was simply an issue that was considered separately from the determination of the appropriate equalization payment by both the district court and the court of appeals.[5] Thus, our opinion in *Johnston* does not affect Angela's ability to bring these claims. Additionally, our review of the district court's orders reflects the district court did not modify the original decree requiring the 2012 corn crop be divided equally between the parties, as the district court explained that its earlier ruling in the decree was "confirmed."

We agree the order denying Angela's application for declaratory judgment was in error. Jeremy has not presented evidence of payment, and the 2012 corn crop was not considered in determining the amount of the equalization payment. As a result, the district court failed to address Angela's assertions in the application for declaratory judgment regarding the amount she is owed for her portion of the 2012 corn crop proceeds. Therefore, we reverse the district court's denial of the application for declaratory judgment, and remand for entry of a declaratory judgment declaring Angela's continued entitlement to the proceeds of one-half of "all corn on hand," which was the remaining 2012 crop that the parties and district court believed existed at the time of entry of the decree, 90,467 bushels, less the deduction for commissions and hauling expenses and the

---

[5] If the 2012 crop on hand had been incorporated into the chart and calculation set forth in the decree, the asset's net value would have been at best an estimate because not all of the crop was sold, and the deductions from the gross proceeds would have also been estimates.

amount repaid to FSA on the sealed corn.[6]  We also remand for a hearing to determine the proper amount of such deductions and a new payment schedule.

### IV. Order Dismissing the Application for Contempt.

Angela also contends the district court's order dismissing her application for contempt filed in September 2015 is "illegal" because it is not supported by substantial evidence.  Specifically, Angela contends the court abused its discretion by failing to find Jeremy in contempt for his failure to hold Angela harmless from the mortgage debt on the marital acreage.  Angela also contends the district court failed to address, and should have found Jeremy in contempt for his failure to divide the proceeds, or pay Angela one-half of the net proceeds for the 2012 corn crop.

"In order to find a person guilty of contempt, a court must find beyond a reasonable doubt that the individual willfully violated a court order or decree." *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995); *see* Iowa Code § 598.23(1).

> A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty.  If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful.  However, the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt . . . .

---

[6] In our use of the phrase "at the time of the entry of decree," we specifically include the 90,487 bushels each party believed existed at that time.  This quantity of bushels includes the crops sold in February and June 2013—as shown by the sales contracts included in the record as exhibits 133A and 133B.The sales of some of the crop in February and June were  facts unbeknownst and undisclosed to the decretal court at the time of trial.

*Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007) (citation omitted). There are two ways a contemnor may show that a failure to comply with a court order was not willful: (1) by showing that the order was indefinite on the issue; or (2) by showing that the contemnor was unable to perform the act ordered. *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998).

*A. Failure to hold Angela harmless as to the mortgage.* Angela asserts the district court erred in determining Jeremy was not in contempt for his failure to assume payment of the mortgage on the marital acreage.

In response to Angela's application for contempt, Jeremy argued his petition for bankruptcy and the resulting bankruptcy stay order prevented him from paying the mortgage. Additionally, Jeremy asserted Angela contributed to her damages with respect to the mortgage. Although Jeremy was awarded the marital residence in the August 2013 dissolution decree, Angela continued living in the home until January 2014 when she was found in contempt for failing to vacate the residence. Additionally, Jeremy contends Angela hindered Jeremy's ability to obtain financing to pay the mortgage because she refused to provide the mortgage information to Jeremy and bank representatives. Jeremy also contends Angela hindered the sale of the home by objecting to two sales due to her understanding that Jeremy was not following the proper bankruptcy procedure. By the time Angela's application for contempt was filed, the martial residence had been disposed of by execution of a deed in lieu of foreclosure. After Angela executed the deed as requested, the bank released her under the note, released her from liability for missed payments on the mortgage, and released her from liability for attorney fees incurred by the bank.

In its order dismissing the application for contempt, the district court did acknowledge Jeremy "failed to pay approximately three mortgage payments on the residence." However, the court also noted Jeremy "testified that his failure was based on his dire financial situation that resulted in his declaring bankruptcy." Therefore, the court held Angela had "not met her burden to show [Jeremy] [wa]s in willful violation of the court's orders" and dismissed the application for contempt.

We conclude the district court's determination that Jeremy did not willfully violate the decree is supported by substantial evidence from which a rational trier of fact could determine beyond a reasonable doubt Jeremy was not in contempt. Jeremy was legally prevented from making any payments on the mortgage by the bankruptcy stay order. Additionally, once the matter was resolved on appeal and the bankruptcy action was dismissed, Jeremy refinanced his debts as ordered by the decree and made a substantial payment to Angela. Rather than a willful violation, Jeremy's actions exhibit a reasonable effort to comply with the requirements of the decree of dissolution. We thus affirm the district court's determination Jeremy was not in contempt for failure to hold Angela harmless as to the mortgage.

*B. Failure to divide the proceeds from the 2012 corn on hand.* Angela also contends the district court's order dismissing her application for contempt failed to address Jeremy's failure to pay Angela for one-half of the proceeds from the sale of the 2012 corn on hand. Angela's motion to enlarge and amend requested the court address this issue, but the motion was denied without explanation. Angela asserts substantial evidence does not support the finding that Jeremy

was not in contempt for failure to pay her for one-half of the 2012 corn crop proceeds.

We have previously addressed Jeremy's claim that Angela was precluded by past court orders and our prior ruling from initiating the contempt proceedings. None of the post-decree orders by the district court modified or relieved Jeremy of his duty to pay Angela for one-half of the proceeds from the 2012 corn crop. Neither party disputes that Angela did not receive a cash payment for her portion of the 2012 corn crop proceeds after reduction for commissions, hauling expenses, and the debt owing to FSA.

Rather, Jeremy asserts Angela's one-half of the proceeds were properly taken by Landmands due to Angela's March 2013 security agreement with Landmands. However, while the March 2013 security agreement secured Landmand's interest in the proceeds, it did not relieve Jeremey of the duty to hold Angela harmless as to the 2013 operating loan and to pay Angela for one-half of the 2012 corn crop proceeds. A portion of Angela's proceeds from the 2012 corn crop was paid toward the 2013 operating loan despite the order in the dissolution decree that she be held harmless for that debt.

In respect to the issue of Jeremy's willful failure to pay, we note there was a bankruptcy stay order[7] pending from November 12, 2013, until December 22, 2014, when the bankruptcy proceeding was dismissed. At least until December 23, 2014, we would not conclude Jeremy's nonpayment was willful. We conclude, however, that in light of the terms of the decree, post-decree orders, and our own ruling, there was sufficient indefiniteness or confusion of

---

[7] *See* 11 U.S.C. § 362(a).

Jeremy's obligations to withhold a finding of contempt. We observe an experienced district court judge also concluded Jeremy's payment obligation had been resolved. Accordingly, we affirm the district court's order dismissing Angela's application for contempt. However, Jeremy is not shielded from future applications should he fail to follow the district court's new payment date or schedule.

**V. Attorney Fees.**

Angela also requests attorney fees pursuant to Iowa Code section 598.24, which allows for a discretionary award of attorney fees to a party bringing a successful action for contempt. Angela was not successful on appeal in respect to her application for contempt and, therefore, we decline Angela's request for attorney fees.

**VI. Conclusion.**

We affirm the district court's finding that Jeremy was not in contempt for failure to hold Angela harmless as to the mortgage and payment for one-half of the 2012 corn on hand at the time of the entry of the decree, as we have defined that amount. However, we find the district court erred in determining Angela has been paid for one-half of the 2012 corn on hand. We reverse the district court's order denying the application for declaratory judgment on the issue of division of the 2012 corn on hand, and we remand for entry of an order granting the application, fixing a new payment date or schedule, and further proceedings consistent with this opinion. We decline to award attorney fees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**