In re the MARRIAGE OF Cynthia Ann SWAN and Brent Noel Swan,

Upon the Petition of Cynthia Ann Swan, Appellant,

And Concerning Brent Noel Swan, Appellee.

No. 93–1388.

Supreme Court of Iowa.

Jan. 18, 1995.

J. Bryan Schulte of Bauer, Schulte, Hahn & Swanson, Burlington, for appellant.

James W. Miller of Cray, Goddard & Miller, Burlington, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

TERNUS, Justice.

This case presents several issues but only one of first impression. Appellee Brent Swan received a lump-sum payment of workers' compensation benefits. His former wife, appellant Cynthia Swan, claims that this payment should be considered as income for purposes of determining Brent's current child support obligation. We agree. However the district court and court of appeals, without explanation, ordered Brent to pay child support in an amount below the payment required by the child support guidelines when Brent's workers' compensation payment is considered. Therefore, we vacate the decision of the court of appeals, modify the amount of child support and otherwise affirm the district court's order.

I. *Background Facts and Proceedings.*

Brent and Cynthia married in 1978 and later had two children. When their marriage was dissolved in 1986, the court awarded both parties joint legal custody. Cynthia was granted primary physical custody and Brent was ordered to pay child support of $160.00 per week. The court raised this figure to $177.50 in a later modification proceeding. Brent was also required to provide medical insurance for the children and pay all medical expenses not covered by insurance.

In May of 1991, Brent sustained a work-related back injury during his employment with United Parcel Service (UPS). Although his physicians eventually released him to return to work with restrictions, they expressed concern that a return to his former job would aggravate his back problem. They also agreed that he had a permanent physical impairment of nine percent to twelve percent of the body as a whole.

In January of 1993, Brent and UPS settled his workers' compensation claim, agreeing that Brent had sustained an industrial disability of thirty percent. Brent's benefits for this level of disability were 150 weeks of compensation at a rate of $482.32. In return for Brent's resignation of employment, UPS agreed to pay Brent a lump sum of $60,772.32, representing the remaining 126 weeks of disability benefits not previously paid. After attorney fees and expenses, Brent received $42,304.25. Rather than seeking alternate employment, Brent returned to school to obtain training as a radiology technician.

In October of 1992, Brent filed this modification action. He asserted that his reduced earning capacity and lower income constituted a substantial change in circumstances warranting a reduction in his child support obligation. He also asked that the parties more equitably share the responsibility to provide health insurance and pay unreimbursed medical and dental expenses.

Cynthia then filed her own request for modification of the dissolution decree. She alleged that Brent was behind on his child support payments and had failed to pay the children's medical expenses as required by the decree. She asked the court to impose a trust upon the remaining settlement funds so they would be available for future child support and medical expenses. Subsequently, Cynthia filed an application to show cause why Brent should not be held in contempt for failing to meet his child support and medical support obligations. Cynthia sought attorney fees in her modification request and her application to show cause.

After a consolidated hearing, the district court reduced Brent's child support obligation to $100 per week. It did not explain its computations in arriving at this figure. The district court also relieved Brent of his obligation to provide medical insurance for the children and placed this responsibility on Cynthia. Each party was ordered to pay one-half of medical and dental bills not covered by insurance. Cynthia's requests for a trust and for attorney fees were denied.

On the contempt action, the court found that Brent had paid all back child support except accrued interest. Although Brent had not maintained insurance or paid certain medical and dental expenses of the children, the court found that his failure to do so was not willful but rather was due to his injury and the loss of his job. Consequently, Brent was not held in contempt. In a ruling on a posttrial motion, the court awarded Cynthia a judgment against Brent for the unpaid medical and dental bills.

Cynthia appealed on three grounds. First she challenged the district court's calculation of child support. She argued that Brent had voluntarily quit his job at UPS so the court should have imputed to him the income he would have earned had he remained employed there. Additionally, she argued that Brent's lump-sum workers' compensation settlement should have been considered as income to him as if he had received weekly benefits of $482.32 for 150 weeks. Child support, she submits, should have been calculated on the basis of this income, not arbitrarily set at $100 per week.

Cynthia's second complaint on appeal was the district court's refusal to find Brent in contempt for failing to meet his child support and medical support obligations. She claimed Brent could have used his workers' compensation settlement to bring his arrearages current sooner than he did. Finally Cynthia argued that the district court should have imposed a trust on Brent's cash resources to guarantee payment of future child support and medical expenses.

The court of appeals found that Brent had not voluntarily quit his job at UPS. It concluded that Brent had shown a substantial change of circumstances warranting a modification of child support to $100 per week. The court of appeals did not reveal its method of computing this amount nor did it specifically explain its treatment of Brent's workers' compensation settlement.

The court of appeals rejected Cynthia's arguments that Brent was in contempt and that a trust should be imposed on his cash resources. However, the court did modify the district court's decision by ordering Brent to provide health insurance for the children.

We granted further review at Cynthia's request and have chosen to review all issues. *Bokhoven v. Klinker*, 474 N.W.2d 553, 557 (Iowa 1991). Our review of the modification action is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

II. *Reduced Earning Capacity and Lower Income as a Substantial Change in Circumstances.*

The court may modify an order of child support where a substantial change in circumstances has been shown to exist. Iowa Code § 598.21(8) (1993). Changes in "the employment, earning capacity, income or resources of a party" may be considered. *Id.* § 598.21(8)(a).

■ Nevertheless, a parent may not rely on a claim of decreased income to obtain a modification of a support order if the par-

ent's reduced earning capacity and inability to pay support is self-inflicted or voluntary. *In re Marriage of Foley,* 501 N.W.2d 497, 500 (Iowa 1993). Therefore, parents who reduce their income through an improper intent to deprive their children of support or in reckless disregard for their children's well-being are not entitled to a commensurate reduction in child support payments.

Applying these principles, we have held that a father who quit his job to finish his education and take a job with less earnings was not entitled to have his child support lowered. *In re Marriage of Dawson,* 467 N.W.2d 271, 276 (Iowa 1991). However, we agree with the district court and the court of appeals that such a situation does not exist here. Brent did not voluntarily resign his employment with UPS. Furthermore, his decision to return to school was not made with an improper intent to deprive his children of support or in reckless disregard for their financial well-being.

■ A. *Resignation.* Brent worked as a package driver for UPS. He drove a commercial-sized vehicle and delivered and picked up packages at a constant pace during a full work shift. An essential function of his position was the ability to "bend, stoop, crouch, climb, stand, sit, walk, and turn/pivot for up to 9.5 hours per day, 5 days per week."

Brent's surgeon stated that Brent should avoid repetitive bending or twisting maneuvers and long periods of driving on uneven surfaces. There was substantial medical evidence that a return to Brent's former job carried a considerable risk of aggravation of his condition. Additionally, the attorney who represented Brent in the workers' compensation case testified that Brent's resignation was a condition of the settlement of his workers' compensation claim. Under these circumstances Brent's termination of employment was not voluntary.

■ B. *Return to school.* We also conclude that under the unique circumstances of this case, it was reasonable for Brent to obtain vocational training rather than seek full-time employment. Brent has no education beyond high school and he is now unable to perform any job that requires extended use of his lower back. The evidence showed that his reasonable prospects for employment were in minimum-wage positions only. A period of retraining will allow him to increase his future earning capacity and correspondingly his ability to pay future child support.

Moreover, the 126–week period represented by Brent's workers' compensation settlement expires in May of 1995, the same month he will complete his schooling. Thus, he has not left his children entirely without support while he is unemployed.

An additional factor that makes Brent's decision reasonable is the fact that in the eight years since the parties were divorced, Cynthia has been unemployed or only minimally employed. During this period she has obtained a bachelor's degree in criminal justice and attended schools for a paralegal degree. At the time of the hearing on the modification, she had only one course left to receive her paralegal degree. Now that Cynthia's education and training are virtually complete, we think it is appropriate, as did the district court, for Cynthia to shoulder a larger share of the responsibility for supporting the parties' children than she has in the past. *See generally* Iowa Code § 598.21(4)(a) (1993) (in setting child support "consideration shall be given to the responsibility of *both* parents to support and provide for the welfare of the minor child") (emphasis added).

Therefore, we conclude that Brent's actions do not show an intent to deprive his children of support nor a reckless disregard for their well-being. Consequently, we will not impute Brent's former earnings as an employee of UPS to him for purposes of setting his current child support obligation. *See Nicolls v. Nicolls,* 211 Iowa 1193, 1196–98, 235 N.W. 288, 289–90 (1931) (spousal support decreased when former husband was discharged from his job and because of health problems could not secure employment with comparable compensation). We think that Brent has proved a substantial change in circumstances warranting a reduction in his child support payments.

III. *Workers' Compensation Settlement.*

Cynthia argues that the district court and court of appeals ignored Brent's workers' compensation settlement in calculating his new support obligation. She is correct insofar as neither court explained its calculation of support under the guidelines nor did they justify any departure from the guidelines' amount.

■ "Our child support guidelines are to be strictly followed unless their application would lead to an unjust or inappropriate result." *State ex rel. Reaves v. Kappmeyer*, 514 N.W.2d 101, 104 (Iowa 1994) (citing Iowa Code § 598.21(4)(a) (1991)). A court should first determine the amount of support owed under the guidelines and then decide whether an adjustment of that amount is warranted. *Id.*

Under these principles, the district court should have first calculated the amount that Brent would owe under the guidelines for two children based on the parties' current incomes. Cynthia presently has net monthly income of $338.71. Brent works a few hours a week at the YMCA. His net income from this employment is minimal.

■ That brings us to the primary issue in this case—do we treat Brent's lump-sum settlement of his workers' compensation claim as income for purposes of determining his child support obligation. We have previously stated in dicta that workers' compensation benefits are properly considered as income in setting the amount of child support. *In re Marriage of Lee*, 486 N.W.2d 302, 305 (Iowa 1992). We believe this statement is correct.

Workers' compensation benefits are not a windfall. They are directly related to the worker's former earnings and his or her ability to earn income in the future. *See Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 466 (Iowa 1969) ("Ordinarily, compensation is awarded for incapacity to earn or industrial disability and not for the injury as such."); Iowa Code § 85.36 (1993) ("The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury.").

In this respect, benefits received by Brent represent a replacement of income he could otherwise have earned had he not been injured. The nature of these benefits is the same whether Brent receives them weekly or in a lump sum. Therefore, we hold that Brent's settlement proceeds should be considered as income in setting his child support obligation. *In re Marriage of Dodds*, 222 Ill.App.3d 99, 164 Ill.Dec. 692, 583 N.E.2d 608 (1991), *cert. denied*, 144 Ill.2d 632, 169 Ill.Dec. 140, 591 N.E.2d 20 (1992); *Babish v. Babish*, 361 Pa.Super. 118, 521 A.2d 955 (1987).

Although courts in other states have included lump-sum workers' compensation benefits as income for child support purposes, they have apportioned the money in different ways. The Montana Supreme Court included a lump-sum payment of workers' compensation benefits as income for the year in which it was received, noting that the trial court would have to recalculate child support at the end of that year. *In re Marriage of Sullivan*, 258 Mont. 531, 853 P.2d 1194, 1198 (1993).

In *Lenz v. Wergin*, 408 N.W.2d 873 (Minn. Ct.App.1987), the Minnesota Court of Appeals reached the opposite conclusion. It reversed the district court's decision to treat a mother's receipt of a lump-sum workers' compensation payment as income in the year it was received. *Lenz*, 408 N.W.2d at 877. The Minnesota appellate court held that the trial court should allocate the lump-sum payment over the years from the date of the injury to the date the mother's support obligation ceased. *Id.*

■ We think it is unwise to establish one rule to be applied in all cases. The appropriate treatment of a lump-sum payment of workers' compensation benefits depends on the circumstances of each case. Here Brent received 126 weeks of benefits in a lump sum. The 126-week period expires in May of 1995 which coincidentally is when Brent will complete his schooling. Despite his injury Brent can be gainfully employed and presumably will obtain a full-time job after May of 1995.

Under all the circumstances of this case, we conclude that Brent's workers' compensation settlement should be considered income

**326**

to him for the period of 126 weeks. We use the net proceeds that he actually received,[1] $42,304.25, and apportion this sum over 126 weeks. This apportionment results in a net monthly income of $1454.92 through May 1995. Under the child support guidelines, Brent must pay $117.51 per week in child support. Brent advances no reason to deviate from the guidelines. Therefore, we will require him to pay the guidelines' amount.

Any adjustment of this amount when the imputed workers' compensation income ends in May 1995 will depend upon the financial situation of the parties at that time. Either party may request a modification of the amount of child support then or at any prior time upon proof of a substantial change in circumstances.

IV. *Medical Support.*

■ The original dissolution decree ordered that Brent maintain health insurance on the children and pay all medical and dental expenses not covered by insurance. At Brent's request the district court relieved him of the obligation to maintain insurance and required that he pay only one-half of the noncovered expenses. The district court believed it was time for Cynthia to share financial responsibility for the children on a more equitable basis while Brent attended school. The court of appeals disagreed and refused to modify Brent's obligation to obtain insurance and pay uncovered medical and dental expenses.

We agree with the district court's determination of this issue. At this point neither parent is employed in a job that provides family health benefits. However, Brent shouldered this responsibility during the several years that Cynthia was in school. We think it is fair that Cynthia assume the same burden while Brent is in school.

This resolution is consistent with the obligation of *both* parents to provide for the support and welfare of their children. *See*

Iowa Code § 598.21(4) (1993). It is also consistent with the position that we have taken with respect to spousal support. *See In re Marriage of Wegner,* 434 N.W.2d 397, 399 (Iowa 1988). In this alimony case, we observed that both parties need to earn up to their potential in order to support themselves and not lean unduly on the other party. *Id.* We think the same principle applies here. Cynthia must use her earning capacity to support their children and not rely solely on Brent to do so. Therefore, we affirm the district court's decision on this issue, including the judgment entered against Brent for unpaid medical and dental expenses.

V. *Trust on Workers' Compensation Settlement.*

■ Cynthia requested that the court impose a trust on the remaining workers' compensation settlement proceeds to provide a fund for payment of future child support and medical expenses. *See* Iowa Code § 598.21(1) (1993) (court may set aside part of a parent's property in a separate fund to be used for the support of the children). The district court and the court of appeals refused to do so. We agree.

Except the months preceding the hearing in this action, Brent had been generally prompt in paying child support. We think that the circumstances leading to his tardy payment of support after his injury should not affect his payment of support in the future. His support payments have now been reduced to a level consistent with his current financial status and there is no reason that Brent cannot make his support payments on time. We affirm the trial court on this issue.

VI. *Contempt.*

■ Our standard of review in contempt actions appears somewhat unique. If there has been a finding of contempt, we review

1. Cynthia argues that we should impute the gross amount of the settlement paid by UPS, $60,-772.32, to Brent. She points out that attorney fees are not listed as a deduction from "gross monthly income" in the child support guidelines. However, Brent's workers' compensation settlement was not the typical "gross monthly in-

come" envisioned by the child support guidelines. Attorney fees and expenses of litigation were necessary and unavoidable prerequisites to obtaining the settlement. Therefore, we think it is more realistic and fair to deduct Brent's attorney fees and expenses from his workers' compensation settlement.

the evidence to assure ourselves that the court's factual findings are supported by substantial evidence. *State v. Lipcamon*, 483 N.W.2d 605, 606 (Iowa 1992). The district court's legal conclusions are reviewed for errors of law. *Id.* at 606–07.

■■■ A different standard of review exists on appeals from the trial court's refusal to hold a party in contempt under a statute that allows the trial court some discretion. For example, the statutes involved here, Iowa Code sections 598.23 and 598.23A, provide that a person who fails to make court-ordered child or medical support payments "*may* be cited and punished" for contempt. (Emphasis added.) Under statutes such as these, a trial court is not required to hold a party in contempt even though the elements of contempt may exist. *Compare Barber v. Brennan*, 140 Iowa 678, 681, 119 N.W. 142, 143 (1909) (relevant statute provided that "any violation of the provisions of this statute ... *shall* be punished as a contempt ...") (emphasis added) *with Lipcamon*, 483 N.W.2d at 607 (relevant statute provided that the "court *may* hold a party in contempt for a violation of an order ...") (emphasis added).

■■■ This conclusion is consistent with the nature of chapter 598 contempt proceedings. These proceedings are primarily punitive in nature. *Scully v. Iowa Dist. Court*, 489 N.W.2d 389, 393 (Iowa 1992). Therefore, it makes sense that the trial court may consider all the circumstances, not just whether a willful violation of a court order has been shown, in deciding whether to impose punishment for contempt in a particular case. We hold the trial court here had broad discretion and "unless this discretion is grossly abused, the [trial court's] decision must stand." *Lipcamon*, 483 N.W.2d at 607 (citing *Carr v. District Court*, 147 Iowa 663, 673–74, 126 N.W. 791, 795 (1910)).

■■■ In reviewing the record in this case, we conclude the trial court did not abuse its discretion in refusing to find Brent in contempt. Brent was almost current in his child support payments until the end of 1992, even though his income had been reduced to workers' compensation benefits.

Although he made only partial payments in 1993, all back child support was paid prior to his receipt of the order to show cause. While this latter fact does not prevent a finding of contempt, *see* Iowa Code § 598.22, it may be considered by the court. Additionally, Brent testified that he was unaware of the existence of one of the medical bills until the day of trial. Moreover, one dental bill was incurred after Brent's insurance through UPS ended even though Cynthia had assured Brent that she would obtain the dental treatment while the insurance was still in effect. Finally, Brent had less income during this period due to his injury and unemployment.

Although we think Brent acted irresponsibly toward his children in failing to pay the child support arrearages sooner, the district court did not abuse its discretion in concluding that punishment at this point is not warranted. In fact, jail confinement would be counterproductive because it is in everyone's best interests that Brent remain in school and complete his education as soon as possible. We affirm the district court's decision on the contempt issue.

## VII. *Summary.*

We conclude, as did the district court and the court of appeals, that there has been a substantial change in circumstances justifying a modification of Brent's child support obligation. Therefore, we affirm the district court's decision to reduce child support but modify the amount of that support. We order Brent to make weekly child support payments to Cynthia of $117.51 until modified by the court upon application of either party.

The district court's order is affirmed in all other respects.

Each party shall bear the expense of his or her attorney. Costs are taxed three-fourths to Cynthia and one-fourth to Brent.

**DECISION OF COURT OF APPEALS VACATED; DECISION OF DISTRICT COURT AFFIRMED AS MODIFIED.**