# IN THE COURT OF APPEALS OF IOWA

No. 3-1258 / 13-1232
Filed February 19, 2014

IN RE THE MARRIAGE OF JACQUE L. ERSLAND
AND MITCHELL L. ERSLAND

Upon the Petition of
**JACQUE L. ERSLAND,**
Petitioner-Appellee,

And Concerning
**MITCHELL L. ERSLAND,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Franklin County, Colleen D.

Weiland, Judge.

An ex-husband appeals the district court's dismissal of his rule-to-show-

cause application challenging his ex-wife's compliance with the economic

provisions of their dissolution decree. **AFFIRMED.**

Dani Eisentrager, Eagle Grove, for appellant.

Thomas Lipps, Algona, for appellee.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Mitchell and Jacque Ersland divorced in 2002. A decade later Mitchell sought to hold Jacque in contempt for not executing a promissory note for $17,500, payable to him, as required in the dissolution decree. The district court determined Jacque did not violate the decree because the property equalization was settled between the parties by accord and satisfaction. Mitchell appeals the district court's determination. The district court's dismissal of Mitchell's rule-to-show-cause application rests largely on its credibility findings; because we give those findings significant weight, we affirm the order.

## I. Background Facts and Proceedings

Jacque filed a petition to dissolve her marriage to Mitchell on May 9, 2002. Mitchell did not appear for the dissolution trial. The court entered a decree and default judgment on September 18, 2002.

The decree provided for custody of the parties' minor children, child support, and a division of the parties' property, including the marital home. The decree awarded Jacque the home subject to the indebtedness. The parties were purchasing the home on contract. At the time of the decree, their equity in the real estate was $35,000—one-half of which was awarded to Mitchell. Jacque was to execute a promissory note for $17,500 in favor of Mitchell, secured by a mortgage. The decree ordered the promissory note due and payable one year after the last payment was due on the real estate contract. Interest was to accrue on the note at the rate of five percent per annum beginning January 1, 2003. The decree also directed each party to "retain the personal property,

including the farm machinery and equipment, which is now in the possession of that party."

Mitchell acknowledged he received a copy of the decree and was aware of the provision requiring Jacque to execute a promissory note for $17,500 in his favor which was due after Jacque paid off the contract of the house.[1]

Jacque did not execute a note or mortgage and Mitchell did not demand those documents in the ten years following the divorce. Mitchell testified: "just never thought of it, I guess." But Jacque contends after entry of the decree, Mitchell chose to take machinery and personal property, which was in her possession, in satisfaction of her obligation. Specifically, Jacque recalled that after the divorce Mitchell took a 610 Bobcat skid loader, an ATV, a New Holland manure spreader, an Inland snowblower, a fifty gallon upright air compressor, a 220-volt Lincoln welder, a stock trailer, a bean buggy, and a hay rake. Jacque also presented evidence establishing that Mitchell allowed an acquaintance named John Walzing to take a tractor, which was in Jacque's possession, in repayment of a debt owed Walzing.

On September 14, 2012, Mitchell filed an application for rule to show cause claiming he never received the $17,500 he was owed under the decree. Jacque filed a response to the application, as well as a petition for entry of an order satisfying judgment and a request for attorney fees. On January 7, 2013, Mitchell filed an answer to the petition to satisfy judgment. The district court held a hearing on February 5, 2013. Both parties testified and both called an

---

[1] Jacque testified she still owed approximately $36,000 on the contract at the time of the show-cause hearing.

additional witness to support their positions. The district court entered an order on July 5, 2013, dismissing Mitchell's show-cause application, finding the judgment against Jacque and in favor of Mitchell was satisfied and released, and assessing court costs to Mitchell. Mitchell now appeals.[2]

## II.      Scope and Standards of Review

Appellate review of contempt proceedings is "somewhat unique." *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995). Mitchell is appealing from the court's refusal to hold Jacque in contempt under a statute that allows for some discretion. Iowa Code section 598.23 (2011) provides: "If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt." "A trial court is not required to hold a party in contempt even though the elements of contempt may exist." *Id*. at 327. Unless this discretion is "grossly abused," the court's decision must stand. *Id*.

Our review of the underlying question concerning the equitable doctrine of accord and satisfaction in the context of a dissolution decree calls for a de novo review. *See In re Marriage of Farr*, 543 N.W.2d 828, 831 (Iowa 1996). We give weight to the trial court's findings of fact, especially when considering the credibility of witnesses, but we are not bound by them. *Swan*, 526 N.W.2d at 323.

---

[2] When a defendant is found in contempt, review is by petition for certiorari; but when the district court dismisses the application to punish for contempt, a direct appeal is permitted. *State v. Dist. Ct.*, 231 N.W.2d 1, 4 (Iowa 1975).

### III.    Analysis

This appeal requires consideration of both the equitable doctrine of accord and satisfaction and contempt principles.  Mitchell contends Jacque willfully failed to comply with economic provisions of the dissolution decree.  Jacque contends Mitchell agreed to an alternative means of compliance.

The 2002 decree obligated Jacque to execute a promissory note to Mitchell for $17,500.  She admits she did not do so.  But she submits Mitchell agreed to allow her to discharge the $17,500 obligation by substituting an alternative form of consideration, thus settling her debt to him.  The district court accepted Jacque's assertion of accord and satisfaction—believing her testimony that Mitchell took equipment and personal property in place of the money she owed him by the promissory note.

Accord and satisfaction is a way to discharge a preexisting obligation where the parties agree to give and accept something different in settlement of the claim and perform the agreement.  *Hengesteg v. N. Eng'g, Inc.*, 478 N.W.2d 307, 309 (Iowa Ct. App. 1991).  The "accord" is the agreement, and the "satisfaction" is its execution or performance.  *Id.*  The party advancing the doctrine bears the burden to prove an accord and satisfaction by a preponderance of the evidence.  *See id.*  The existence of "accord and satisfaction" is "a pure question of intention."  *Id.*  The creditor must understand he is taking in full satisfaction of the debtor's claim.  *Id.*  Proof of the required intent may include the agreement itself, the parties' words or actions, and the

surrounding circumstances. *Seidler v. Vaughn Oil Co.*, 468 N.W.2d 474, 475 (Iowa Ct. App. 1991).

In seeking a contempt ruling, Mitchell carried the burden to prove Jacque had a duty to obey a court order and willfully failed to perform that duty. *See Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 138 (Iowa 1988). Contempt proceedings are quasi-criminal proceedings; therefore, Mitchell was required to show Jacque's willful disobedience by proof beyond a reasonable doubt. *See id.* An individual's conduct constitutes willful disobedience if it is "intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *In re Marriage of Wegner*, 461 N.W.2d 351, 354 (Iowa Ct. App. 1990).

The district court heard testimony from the parties. Jacque testified she and Mitchell had a verbal agreement. She said Mitchell came to the farm after the default decree was entered and she told him that he could have the machinery instead of the $17,500 promissory note ordered in the decree. She testified Mitchell picked up the machinery and personal property in more than one trip, and when Walzing loaded up the tractor, "everything was satisfied." A neighbor corroborated the timing of the tractor being loaded. Mitchell denied he retrieved any times from the farm, saying he "[j]ust walked away. Started over." He testified Walzing took the tractor before the divorce.

After hearing the parties' conflicting versions of events, the district court reached the following determination:

> The court finds Jacque's account more credible and more consistent with Mitchell's failure to demand performance until he recently became frustrated with the custodial arrangement. Specifically, I find Mitchell did remove items of personal property—mostly consisting of farm equipment-from Jacque's real estate after the decree [was] entered. Pursuant to the decree, those items belong to Jacque. Mitchell told Jacque that he would take the property in lieu of payment.

The court further found the value of those items exceeded $17,500. Therefore, "an accord and satisfaction was reached between the two parties." The court also decided any failure on Jacque's part to follow through on the obligation was not willful. The court dismissed Mitchell's application and concluded the $17,500 obligation from Jacque to Mitchell was "SATISFIED and RELEASED."

In this case we have no written accord and satisfaction, only the parties' words. The district court believed Jacque's testimony that Mitchell took the property in satisfaction of her obligation under the decree. We give "great deference to the trial court on issues of witness credibility." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 679 (Iowa 1998). Moreover, other evidence in the record supports the district court's disregard of Mitchell's version. *See id.* For instance, we consider the timing of Mitchell's claim—more than a decade after the decree was issued and at a time he was frustrated with the custody arrangement. In addition, Mitchell's testimony indicated when the property was in forfeiture, he took no steps to protect the equity he claims he was still owed. Instead, he said it "wasn't my responsibility." Mitchell exercised visitation for more than ten years, yet testified he had not talked with Jacque since 2000. Given these circumstances, we defer to the district court's witness credibility

finding. Because evidence supports a finding Jacque honestly believed she and Mitchell had agreed to an alternative means of satisfying her obligation under the decree, the court properly declined to find willful disobedience.

Jacque requests appellate attorney fees. Generally, no claim exists for attorney fees, absent a statutory or contractual provision allowing an award. *In re Marriage of McCurnin*, 681 N.W.2d 322, 332 (Iowa 2004). Attorney fees may be taxed against a party held in contempt of a dissolution decree. Iowa Code § 598.24. But section 598.24 does not provide for attorney fees for defense of an unsuccessful contempt action. *Id.* The parties shall be responsible for their own attorney fees on appeal. The costs of this appeal are taxed to Mitchell.

**AFFIRMED**.