**IN THE COURT OF APPEALS OF IOWA**

No. 16-1269
Filed December 6, 2017

**IN RE THE MARRIAGE OF KAREN SUE KASS
AND CURTIS JAMES KASS**

**Upon the Petition of
KAREN SUE KASS,**
        Petitioner-Appellant,

**And Concerning
CURTIS JAMES KASS,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Jones County, Paul D. Miller, Judge.


        Petitioner appeals from an order allocating proceeds from the sale of real property and dismissing the petitioner's application for rule to show cause. **AFFIRMED.**


        Sheree L. Smith, Cedar Rapids, for appellant.

        Matthew J. Petrzelka of Petrzelka & Breitbach, P.L.C., Cedar Rapids, for appellee.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

This appeal arises out of the dissolution of the marriage of Karen and Curtis Kass. The petition was filed in June 2010. The case was not complicated. Nonetheless, here we are, seven years later, and the case continues on, a perpetual motion machine equal parts tomfoolery, incompetence, and neglect. We need not recount the entire procedural history of the case for the purposes of this appeal. In short, the decree was entered in April 2013. The decree divided the parties' personal and real property and included a provision requiring that certain farmland be sold at public auction and the proceeds be divided. After the district court entered its decree, the petitioner's counsel needlessly litigated and relitigated collateral issues related to the sale of the farmland until it was sold in May 2016. This appeal was initiated by Karen and arises out of the district court's order of June 2016, which divided the proceeds of the farm sale and denied Karen's application for rule to show cause.

In her first issue on appeal, Karen challenges the property division. Specifically, she contends that the district court's valuation of a particular piece of real property was in error and that the property division and equalization payment were thus also in error. The property division was set forth in the decree entered in April 2013. Karen timely filed a notice of appeal in May 2013, but she dismissed the appeal. The June 2016 order was a collateral order independent of the decree. Karen's challenge to the property division in the decree is three years too late and not properly before this court. *See Bd. of Water Works Trustees v. City of Des Moines*, 469 N.W.2d 700, 703 (Iowa 1991) ("Plaintiff's appeal was filed within thirty days of the court's ruling on the sanctions motion but it was not filed within thirty

days of the order finally disposing of plaintiff's lawsuit. Thus, we conclude that plaintiff timely appealed only the district court's ruling on sanctions and not the rulings on the merits of its lawsuit. Therefore, we do not consider other assignments of error raised by plaintiff bearing on the main case."); *Hayes v. Kerns*, 387 N.W.2d 302, 308 (Iowa 1986) (holding appellate court only had jurisdiction to address an issue raised in a supplemental order, not all the issues in the original judgment); *In re Fenchel*, 268 N.W.2d 207, 209 (Iowa 1978) (holding a party appealing from a supplemental decree deciding an issue reserved in the original decree may challenge only the supplemental decree's provisions).

In her second and third issues on appeal, Karen challenges the district court's dismissal of her application for rule to show cause. Karen first contends the matter should be remanded because she did not have notice the district court was going to hold a hearing on her application. The argument is unavailing. At the hearing at issue, the district court explicitly stated it was going to address and resolve the application for contempt, and petitioner's counsel did not object or request additional time. Error is not preserved on the issue. *See Van Iperen v. Van Bramer*, 392 N.W.2d 480, 486 (Iowa 1986).

Even if error were preserved, the petitioner would not be entitled to any relief because the claim is directly contrary to the record. The record reflects the district court entered a scheduling order for a combined hearing on the allocation of the proceeds of the farm sale and on the contempt application. Karen's counsel understood the combined hearing encompassed the application for contempt. Prior to the hearing, Karen's counsel filed a document entitled Petitioner's Requested Relief for Contempt, Resolution of Farm Sale Proceeds and Settlement

of Other Post-Dissolution Issues. Counsel also filed exhibits in support of the hearing, including an Affidavit of Attorney Fees for Contempt. Counsel did not object to the contempt hearing. Indeed, counsel was prepared for the contempt hearing with witnesses and exhibits. It is clear counsel had actual notice of the contempt hearing. Her arguments to the contrary are disingenuous, at best.

Karen next challenges the merits of the district court's ruling on the application of the rule to show cause. Iowa Code section 598.23 (2009) provides that "If a person against whom a . . . final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt." The contempt statute provides only that a person "may" be cited and punished for contempt. Iowa Code § 598.23. Thus, "a trial court is not required to hold a party in contempt even though the elements of contempt may exist." *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Because the statute provides for the exercise of trial court discretion in citing and punishing a person for contempt, our review of the district court's denial of the application is for an abuse of discretion. *See id.* Further, we will affirm the judgment of the district court unless it is demonstrated the district court grossly abused its discretion in denying the application. *See id.*

The basis for the application to hold Curtis in contempt was his failure to sign a sales agreement as directed in a court order. In the absence of Curtis's signature, the sale fell through. Curtis testified extensively regarding the reasons he did not sign the document, including the fact that the signing was hastily arranged and his lawyer was not present at the signing. The district court concluded under the unique facts of this case, where the parties, or at least their

attorneys, were litigating and relitigating the terms of the sale, it would not hold Curtis in contempt of court. On the facts presented, we cannot say the district court grossly abused its discretion in denying the application for rule to show cause.

We close with this thought. This case unnecessarily has been prolonged to the detriment of the parties. In particular, the petitioner appears to have lived solely on disability payments in the amount of $785 per month for the last seven years all the while her counsel litigated collateral issues. The sale ultimately netted the petitioner over $447,000 in proceeds.

> The law's delay in many lands and throughout history has been the theme of tragedy and comedy. Hamlet summarized the seven burdens of man and put the law's delay fifth on his list. If the meter of his verse had permitted, he would perhaps have put it first. Dickens memorialized it in *Bleak House*, Chekhov, the Russian, and Moliere, the Frenchman, have written tragedies based on it. Gilbert and Sullivan have satirized it in song. Thus it is no new problem for the profession, although we doubt that it has ever assumed the proportions which now confront us. "Justice delayed is justice denied," and regardless of the antiquity of the problem and the difficulties it presents, the courts and the bar must do everything possible to solve it.

*Dep't of Gen. Servs. v. R.M. Boggs Co., Inc.*, 336 N.W.2d 408, 410 (Iowa 1983) (quoting *Gray v. Gray*, 128 N.E.2d 602, 606 (Ill. App. Ct. 1955)). There was no reason for the delay in this case.

We affirm the judgment of the district court.

**AFFIRMED.**