**IN THE COURT OF APPEALS OF IOWA**

No. 22-1089
Filed August 9, 2023


**IN RE THE MARRIAGE OF KARLA J. UNKE
AND WESLEY B. UNKE**

**Upon the Petition of**
**KARLA J. UNKE, n/k/a KARLA J. WUNDERLIN,**
       Petitioner-Appellant,

**And Concerning**
**WESLEY B. UNKE,**
       Respondent-Appellee.
_____

       Appeal from the Iowa District Court for Clinton County, Mark R. Lawson,

Judge.


       Karla Wunderlin challenges the rulings denying her request for an order

nunc pro tunc and dismissing her application for rule to show cause.  **AFFIRMED.**


       Lynne C. Jasper, Bettendorf, for appellant.

       Caleb A. Petersen of Schoenthaler, Kahler, Reicks & Petersen, Maquoketa,

for appellee.


       Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

The district court observed that, "Usually, the entry of a decree of dissolution of marriage resolves the disputes between parties. In this case, the decree has spawned further litigation." This litigation, following entry of the decree dissolving the eighteen-year marriage of Karla Wunderlin and Wesley Unke, forms the basis for this appeal. Karla challenges the rulings denying her request for an order nunc pro tunc and dismissing her application for rule to show cause. Because Karla has not shown either an obvious error in the marital property order dividing Wesley's pension or Wesley's willful noncompliance with the child-support provisions of the decree, we affirm. We decline to award either party their appellate attorney fees.

### I. Background Facts.

Karla petitioned to dissolve her marriage to Wesley in August 2020. In April 2021, the parties stipulated to child custody, physical care, and visitation for their two children and the division of most of their property. The court decided the remaining issues after an "informal trial," which was held the same day. But because the parties disagreed over the language of the decree, it was not entered until October 2021. Based on changes to the parties' situations that occurred during the intervening six months, Karla began modification proceedings less than two weeks later.

### II. Motion for Order Nunc Pro Tunc.

Karla's first assignment of error concerns the order denying her motion for order nunc pro tunc to correct the marital property order dividing Wesley's Municipal Fire & Police Retirement System (MFPRS) pension. Karla claims the order does not conform to the intent of the dissolution decree. Because this is an

equity action, we review her claim de novo. *See In re Marriage of Miller*, 966 N.W.2d 630, 635 (Iowa 2021). Karla must show by a preponderance of the evidence that a nunc pro tunc order is appropriate. *See In re Marriage of Bird*, 332 N.W.2d 123, 125 (Iowa Ct. App. 1983).

We begin with some background information about the MFPRS pension, which is needed to understand the issue on appeal. Wesley began making monthly contributions to the pension during a prior marriage, and his former spouse was awarded a portion of his pension in the decree dissolving that marriage. During the last three years of his employment, which ended the month the parties entered their stipulation, Wesley contributed to a deferred retirement option plan (DROP) account. The district court described how the DROP account works:

> When a member enters the DROP program, they elect a retirement date. In this case, Wes notified MFPRS that he would retire three years from the date he entered DROP. His monthly pension amount was calculated as of the date he entered DROP. His remaining three years of contributions under the DROP program were accumulated into an account which was then paid out in a lump sum three years later when he retired. [The Executive Director of MFPRS] explained the DROP account is part of the defined benefit plan and is treated as such by the governing board of MFPRS.

At the time of his retirement, Wesley's DROP account had accumulated a total of $85,428.

The April 2021 stipulation states that the DROP account "shall be divided equally between the parties, after the segregation attributed to [Wesley's former] wife . . . is paid, if any." The district court incorporated the stipulation into the dissolution decree, finding it "equitable to equally divide the marital portion of both

[parties'] pensions." It then decreed that Wesley's pension was to be divided under the *Benson* formula:[1]

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that [Wesley]'s MFPRS account shall be divided by a Qualified Domestic Relations Order wherein [Karla] is awarded one-half of the monthly pension payments multiplied by a fraction wherein the numerator is the total number of months participating in the plan while married divided by the total of months [Wesley] participated in the plan. This shall also include an award of any surviving spouse benefits under the plan. The court reserves jurisdiction to enter any subsequent orders that are necessary to implement this portion of the Decree. [Karla] shall be responsible for the drafting of the Qualified Domestic Relations Order and any costs administered by the plan administrator for implementing the QDRO shall be divided equally by the parties.

In December 2021, the court entered a marital property order (MPO) dividing Wesley's pension benefits:

> [Karla] is awarded the following percentage of the monthly pension from the System to which [Wesley] is otherwise entitled; remaining payable to [Wesley] after any prior division. Said percentage being equal to one-half of the amount determined by the following formula, the numerator of which is the number of months [Wesley] contributed to the plan during the marriage, and the denominator of which is the total number of months [Wesley] contributed to the plan prior to drawing benefits; and [Karla] shall be entitled to the same proportionate share of any increases in [Wesley]'s pension following [Wesley]'s retirement.

Because an earlier draft of the MPO did not reference the portion of the pension awarded to Wesley's former spouse in the earlier dissolution action, MFPRS rejected it. The MFPRS asked Karla's attorney to revise the MPO to include the "remaining payable to [Wesley] after any prior division" language. After the modified MPO was submitted and approved, the MFPRS calculated the parties'

---

[1] *See generally In re Marriage of Benson*, 545 N.W.2d 252 (Iowa 1996).

shares of the pension after setting off the portion for Wesley's former wife and notified them of the amounts.

In January 2022, Karla moved to stay until entry of an amended MPO, arguing that the pension plan's interpretation of the MPO did not match the terms of the dissolution decree. The court denied the motion, finding that any inequity could be resolved by further order. In March 2022, Karla moved for entry of an order nunc pro tunc "to correct the amount distributed to her for her share of the monthly pension from MFPRSI as set forth by the Court in the Decree of Dissolution of Marriage." The court denied that motion as well, and Karla appealed.

Karla contends the court erred by denying her motion for order nunc pro tunc. She claims that adding the phrase "remaining payable to [Wesley] after any prior division" altered her share of the pension so that it no longer reflects the intent of the court in entering the dissolution decree.

"[N]unc pro tunc orders are limited to situations where there is an obvious error that needs correction or where it is necessary to conform the order to the court's original intent." *State v. Johnson*, 744 N.W.2d 646, 648 (Iowa 2008). They cannot correct judicial thinking, judicial conclusions, or mistakes of law. *Id.* The intent of court entering the order is critical in determining whether a mistake was made. *Id.*

We agree with the district court that a nunc pro tunc order is not appropriate here because there is no obvious error or mistake in the marital property order. The parties' April 2021 stipulation states that the DROP account will be divided equally *after* the portion previously awarded to Wesley's former spouse is paid.

The decree states that "the Partial Stipulation and Agreement filed in this matter is hereby approved, and its terms are adopted and ordered by the Court as if fully set forth herein." The court's intent to follow the stipulation is also obvious by its finding that it is equitable to equally divide the *marital portion* of the pension. Because a prior court order awarded part of Wesley's pension to his former spouse, that portion of the pension is not marital property. The MFPRSI required the disputed language added to the MPO for that reason, as the MFPRSI administrator explained: "[The first MPO] didn't reference a prior [MPO] that was already in place. So, you know, when you have more than one in place, the second one can't award benefits that the first one's already awarded."

Because the MPO reflects the intent of the decree, we affirm the denial of the nunc pro tunc order.

### III. Application for Rule to Show Cause.

Karla also challenges the dismissal of her application for rule to show cause. She contends the court erred by not finding Wesley in contempt for failing to pay child support. Because the court need not hold a person in contempt even if the elements of contempt are shown, we review the district court's ruling for an abuse of discretion. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995).

The October 2021 decree ordered Wesley to pay child support of $792.52 per month, effective May 2021. Between the time of the stipulation and informal trial and the entry of the decree, Wesley both retired and obtained new employment. Based on the changes to his financial situation, Karla petitioned to modify the amount of Wesley's child support. The district court entered a temporary order, increasing the child support payment to $1148.40 per month

beginning in December 2021. Starting in February 2022, Wesley's child support payment was increased to $1495.61.

In March 2022, Karla initiated contempt proceedings against Wesley, claiming he willfully failed to pay her the portion of his pension she was awarded, child support payments, and the children's medical expenses. The district court rejected Karla's claims and dismissed her application for rule to show cause in its entirety. As to the child support payments, the court found Karla's claim that Wesley was $4727.32 in arrears was "patently incorrect":

> Wes introduced the child support payment record into evidence as Exhibit TT. Karla did not dispute these figures. It shows Wes paid $1828.90 in 2021 and $10,387.32 in 2022. This is a total of $12,216.22. The payments are generally consistent and appear to have been paid through various income withholding orders.
> As of the second day of trial, Wes was $115.05 in arrears. This is certainly not unusual for someone paying through an income withholding order. He paid this amount at trial. Karla has failed to prove Wes's minor arrearage is contemptuous.

Karla argues that the court should have found Wesley in contempt because he failed to timely pay child support beginning in May 2021, noting he did not make his first payment until October 22, 2021. This is unsurprising because the decree requiring him to pay child support was not entered until October 7, 2021. But at the time of the hearing on Karla's application, the record shows that Wesley had paid $12,216.22 of the $12,221.27 that he owed for child support. He paid the remainder at the hearing. Because Karla did not show willful nonpayment of child support, the district court did not abuse its discretion in dismissing her application for rule to show cause.

**IV. Appellate Attorney Fees.**

Each party asks for an award of their appellate attorney fees. Appellate attorney fees are not a matter of right. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We may award appellate attorney fees based on the needs of the party seeking the award, the other party's ability to pay, and the merits of the claims made on appeal. *Id.*

The record shows that Wesley has the means to pay his attorney fees. Although Karla earns less, her appeal lacks merit. For these reasons, we decline to award appellate attorney fees to either party.

**AFFIRMED.**