# IN THE COURT OF APPEALS OF IOWA

No. 25-0899
Filed June 10, 2026

**In re the Marriage of Ryan Paul Waller and Sasha Nichole Kill**

Upon the Petition of
**Ryan Paul Waller,**
Petitioner–Appellee,

And Concerning
**Sasha Nichole Kill,**
Respondent–Appellant.

Appeal from the Iowa District Court for Polk County,
The Honorable Lawrence P. McLellan, Judge.

## REVERSED AND REMANDED WITH DIRECTIONS

Sydnee M. Waggoner (argued) and Anjela A. Shutts of Whitfield & Eddy,
P.L.C., Des Moines, attorneys for appellant.

Maureen C. Cosgrove and Kolby P. Warren of McCormally & Cosgrove,
PLLC, Des Moines, attorneys for appellee.

Heard at oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

In the decree dissolving the marriage of Ryan Waller and Sasha Kill, the district court determined that Ryan's unvested shares of Microsoft stock were part of the marital estate subject to division. The court ordered that the parties each receive one-half of the proceeds from the sale of those stocks as they vest after equally splitting the payment of any taxes due. Now appealing from a contempt action, Sasha asks us to find the district court's interpretation of the decree resulted in her being double taxed. Because we agree with Sasha's calculations, we reverse the contempt ruling, in part, and remand with directions.

## I.     Facts and Prior Proceedings

Ryan and Sasha married in Washington in 2009. They have three children. In 2014, they moved to Iowa so Ryan could pursue a full-time position with Microsoft. As part of his compensation, Microsoft awarded him shares of restricted stock units. So long as he remains employed at Microsoft, the stock options vest quarterly over five years. When they vest, Microsoft withholds a portion of the stocks to account for federal and state income taxes. At the end of the year, Ryan reports the total amount of stocks—including the withheld portion—as income on his tax forms.

Ten years after moving to Iowa, Ryan and Sasha divorced. In those proceedings, Sasha requested that Ryan's restricted stock options be divided "as soon as practicable" after the restrictions lapsed by Ryan selling the stock and paying her "90% of the proceeds for the ½ interest in the lapsed" stock units.  She proposed that he pay her "the remaining 10% of the proceeds of the lapsed shares" less any taxes he paid on shares to be provided to her.

In the decree, the district court awarded each party one-half of the proceeds from the stock distributions as they vested and ordered the parties to equally split any taxes due on the stock sales.

When Ryan had shares vest in the first quarter following their dissolution, his counsel emailed Sasha's counsel. Ryan gave Sasha the option to receive her distribution in shares or cash. The email included a table describing the shares and withholding. For quarter one, Microsoft withheld $5,333.79 worth of shares. Ryan asked Sasha to pay him $2,666.90 to cover half the tax withholding and upon receipt of that payment, he would distribute her share. Sasha did not object to this process, opted to receive stock instead of cash, and paid Ryan the amount he requested.

Come second quarter—when Ryan informed her that another distribution of shares had vested and requested prepayment of her share of taxes—Sasha refused to pay, believing that the withholding accounted for his Social Security and Medicare taxes. Sasha didn't read the decree as holding her liable for those taxes. Because Sasha did not pay the tax amount, Ryan did not turn over her portion of the stock proceeds.

Sasha filed a contempt application, complaining that she should not have had to pay the $2,666.90 in taxes in quarter one and that she was not required to pay Ryan's Social Security and Medicare taxes. Ryan answered, contending that he followed the agreed-to process with no issues for the first quarter. As to the second quarter—and by that time, the third and fourth quarters—he did not distribute her proceeds because she had not paid her portion of the taxes. Ryan filed his own contempt application, alleging Sasha did not pay the taxes as required by the decree.

The court held a show-cause hearing.[1] In her testimony, Sasha mentioned Microsoft's withholding of the taxes: "The decree states that the parties equally split the payment of any state and federal taxes due on account of the sale of the stock, but it looked to me like all of the withholding was being split and included additional taxes." She also noted the challenge of paying the taxes before she'd received her distribution: "me having to give the withholding piece first before receiving shares or cash was extremely hard, and I didn't realize that that was going to be part of that." At the end of the hearing, the court asked the parties to clarify their requests. Sasha's counsel explained their concern about the Medicare and Social Security tax liability, and made this request:

> we are asking the Court to interpret and set a process by which the vested stock—or the unvested stock would be paid out. And we're asking that Mr. Waller provide documentation about the stock received, that the stock is cashed out, and that he pay to Ms. Kill her share of that, and if the taxes— the taxes can be reduced by the amount that is paid to her.

In its written ruling, the court found neither party in contempt, but both in default. It found that Medicare and Social Security taxes were included in federal taxes, so Sasha was required to pay them. And, noting that Sasha agreed that Ryan could deduct federal and state taxes, the court set out a process for deduction rather than for Sasha's payment of the taxes:

> For stock that will vest in the future [Ryan] shall provide documents like Exhibits 50 and 51 to [Sasha] within five (5) days of notification by Microsoft that shares of stock have vested. [Ryan] shall proceed to sell the shares as outlined in the documentation provided to [Sasha] and complete the sale within five (5) days after sending the documentation to [her]. [Ryan] shall deduct one-half of the federal and

---

[1] The district court noted it could not modify the property division: "You've asked me to interpret certain terms in the decree, and I have to use essentially the principles, standards, for interpreting a contract." The parties agreed.

state taxes from [Sasha's] share of the proceeds prior to distribution to [her]. [Ryan] shall distribute [Sasha's] one-half of the sale proceeds within five (5) days of the sale of the stock. With payment of the sale proceeds [Ryan] shall provide [Sasha] with documentation of the value of the shares on the date sold.

Sasha filed a motion under Iowa Rule of Civil Procedure 1.904, requesting the court amend its ruling. She noted that exhibit 50, which the district court referenced in its ruling, "indicates that state and federal income taxes are withheld prior to the transfer of stock to [Ryan]." Since taxes are withheld before the shares reach Ryan, the order should be amended to restrict Ryan from deducting from her share "as to not require [Sasha] to pay [Ryan] an additional amount of taxes." Ryan resisted, saying Sasha is not overpaying taxes.

The court held a hearing on the motion to amend. Sasha argued that because the parties are dividing the *net* shares—after Microsoft withholds shares to account for taxes from the whole quarterly distribution—her half of the proceeds should not be further reduced. In other words, when Ryan deducts taxes from her net proceeds, she is no longer receiving half of the marital asset. Ryan resisted, insisting Sasha is not being double taxed. He added: "we are here on a motion to amend. So as the Court is well aware, what [Sasha] needs to show is that a ruling that the Court made in this contempt hearing is to be amended or modified. I don't believe [Sasha] has met that burden, Your Honor."

The district court denied her rule 1.904(2) motion but "present[ed] [a] chart to demonstrate how the Microsoft stock proceeds should be distributed and allocated between the parties as determined in the original decree."

5

Here is the court's chart showing the stock distribution for the second quarter of calendar year 2024.

| | Value of Stock | Waller | Kill |
|---|---|---|---|
| | $14,185.78 | | |
| Distribution of Stock Proceeds per Decree at 27 of 35 (one-half to each party) | | $7,092.89 | $7,092.89 |
| Less: Taxes Withheld by Microsoft from Waller | | ($5,015.93) | |
| Subtotal of Stock Proceeds | | $2,076.96 | $7,092.89 |
| Kill's one-half payment of taxes to Waller | | $2,507.96 | ($2,507.96) |
| Total Proceeds Allocated by Decree | | $4,584.92 | $4,584.93 |

The court believed that its chart provided the "same information" that was included in the chart attached to Ryan's resistance to the 1.904(2) motion, pictured here.

***New Calculations***

| Quarter | Gross Value | Total Withholding (paid by Ryan) | Ryan's 1/2 of Wittholding | Sasha's 1/2 of Withholding | Total Net Value (gross less total wittholding) | Ryan's 1/2 of Net (1/2 of total withholding) | Sasha's 1/2 of Net (1/2 of total withholding) | Sasha's Payout (1/2 of net less 1/2 of withholding) | Status |
|---|---|---|---|---|---|---|---|---|---|
| CY24Q1 | $15,085.64 | $5,333.80 | $2,666.90 | $2,666.90 | $9,751.84 | $4,875.92 | $4,875.92 | Accepted by Sasl | Transaction complete |
| CY24Q2 | $14,185.78 | $5,015.93 | $2,507.97 | $2,507.97 | $9,169.85 | $4,584.93 | $4,584.93 | $2,076.96 | Pending acceptance by Sasha |
| CY24Q3 | $14,988.90 | $5,299.41 | $2,649.71 | $2,649.71 | $9,689.49 | $4,844.75 | $4,844.75 | $2,195.04 | Pending acceptance by Sasha |
| CY24Q4 | $11,856.88 | $3,563.84 | $1,781.92 | $1,781.92 | $8,293.04 | $4,146.52 | $4,146.52 | $2,364.60 | Pending acceptance by Sasha |
| CY25Q1 | $11,383.37 | $3,808.72 | $1,904.36 | $1,904.36 | $7,574.65 | $3,787.33 | $3,787.33 | $1,882.97 | Pending acceptance by Sasha |

But Ryan's chart awards Sasha just $2,076.96 in proceeds for the second quarter, while the district court's chart awards her $4,584.93. Seeking to clarify that discrepancy, Sasha filed a second rule 1.904 motion. Ryan resisted, contending the court's ruling was clear. The district court denied her second motion. Sasha appeals.

## II.    Subject Matter Jurisdiction

Before reaching the merits, we consider Ryan's claim that Sasha's second motion under Iowa Rule of Civil Procedure 1.904(2) did not toll her time to file a notice of appeal. In his view, we lack jurisdiction because she filed her notice of appeal too late.

In general, a notice of appeal must be filed within thirty days from a final order or judgment. Iowa R. App. P. 6.101(1)(b). But this deadline changes if a party files a timely motion to reconsider, enlarge, or amend under rule 1.904(2). Such a motion tolls the thirty-day period for appealing; the clock restarts after the court rules on that motion. *Id.* To invoke tolling, the first rule 1.904(2) motion a party files need not be proper—it need only be timely. Iowa R. Civ. P. 1.904 cmt.; *see also Carroll v. Samuell*, No. 16-0003, 2016 WL 7395757, at *3 n.2 (Iowa Ct. App. Dec. 21, 2016).

But a second rule 1.904(2) motion must be "proper" to toll the appeal deadline. Iowa R. App. P. 6.101(1)(c). Successive rule 1.904(2) motions are prohibited unless the court modified its order and "the subsequent motion is directed only at the modification." *Id.*; Iowa R. Civ. P. 1.904(4).

Here, the district court entered its contempt order on January 28. Sasha filed her first rule 1.904(2) motion on February 11, and the court ruled on April 4. She filed her second motion on April 15, and the court ruled on April 30. She filed her notice to appeal May 30. Two questions emerge: Did

7

the ruling on Sasha's first rule 1.904(2) motion modify the initial contempt order? And was Sasha's second rule 1.904(2) motion "directed only at the modification"? *See* Iowa R. Civ. P. 1.904(4).

We answer both inquiries in the affirmative. True, in ruling on Sasha's first motion, the court wrote, "the respondent's motion to enlarge, amend, or reconsider is denied." If we considered only that line, Sasha's second rule 1.904(2) motion would be improper. *See In re Marriage of Okland*, 699 N.W.2d 260, 265–66 (Iowa 2005) ("[A] rule 1.904(2) motion filed by a party following a denial of the party's prior rule 1.904(2) motion is improper . . . ."). But in determining whether there was a modification, we look at the content of the ruling. *Cf. Turner v. CCRC of Cedar Rapids, LLC*, No. 20-0973, 2021 WL 3076742, at *2–3 (Iowa Ct. App. July 21, 2021). In ruling on Sasha's first motion, the district court included a chart that was not a part of its original ruling. As Sasha contends, the court's chart contradicts the chart it favorably references from Ryan's resistance. Sasha's second rule 1.904(2) motion sought clarification on that contradiction. Thus, the second motion was proper and tolled the time to appeal. So, we have subject matter jurisdiction.

## III. Scope and Standard of Review

We generally review interpretation of dissolution decrees de novo. *In re Marriage of Morris*, 810 N.W.2d 880, 885 (Iowa 2012). But we review contempt rulings for correction of errors at law. *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). And when a contempt action involves construction of a dissolution decree, we review for correction of errors at law. *In re Marriage of Anderson*, 451 N.W.2d 187, 191 (Iowa Ct. App. 1989).

## IV.   Error Preservation

We start with Ryan's contention that Sasha did not preserve error. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Generally, an argument raised for the first time in a posttrial motion is unpreserved for appellate review. *Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 695 (Iowa 2013).

Ryan asserts, "[a]t no time did Sasha make the argument she was being 'double taxed.'" True, Sasha did not expressly argue that a second withholding resulted in double taxation. But, as Sasha counters, "[t]he substance of the argument [on appeal], that she should receive fifty percent of the net proceeds, was squarely presented to the district court." One purpose of error preservation is to alert the court to an issue at the time when corrective action can be taken. *See Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). That happened here. Once the district court set forth a process for distribution, Sasha identified inequities and followed through with her rule 1.904(2) motions. We find Sasha preserved error.

## V.   Analysis

Having clarified that we have jurisdiction to hear this case and error was preserved, we turn to the merits of Sasha's appeal. She asks us to reverse the district court's default orders and "amend the ruling to award each party fifty percent of the net proceeds upon the distribution of Microsoft stock."

In considering her request, we begin with the language in the decree. We construe a decree like other written instruments. *In re Marriage of Brown*, 776 N.W.2d 644, 650 (Iowa 2009). We give effect to the court's intent—both

9

express and implied—which may be gathered from the four corners of the decree. *In re Marriage of Goodman*, 690 N.W.2d 279, 283 (Iowa 2004). Here, the decree orders:

> As to Microsoft stock which Ryan has been awarded as of January 8, 2024, but which have not yet vested, at the time such stock awards vest, Ryan shall sell the stocks and pay Sasha one-half of the proceeds after the parties equally split the payment of any state and federal taxes due on account of the sale of the stock.

In evaluating the four corners of the decree, we find the decretal court intended for the parties to split both the taxes and the proceeds equally. *See id.* With this intent in mind, we consider the district court's rulings and the parties' arguments.

In its ruling, the district court set out a process for distribution, which allowed Ryan to deduct value from Sasha's share of the proceeds, even though Microsoft already withheld shares to account for income taxes. Then, after Sasha's first rule 1.904(2) motion, the district court provided a chart. Using numbers from the second quarter, the court said the chart demonstrated "how the stock proceeds are to be allocated pursuant to the decree" so that "the parties are receiving one-half of the stock proceeds." The court maintained that its chart contained the same information as a chart that Ryan attached to his resistance. But it did not.

The district court's chart takes the stock proceeds ($14,185.78) and divides that amount in half, awarding Ryan and Sasha each $7,092.89. The court then reduces Ryan's share by the amount that Microsoft withheld ($5,015.93). The subtotals reflect $2,076.96 for Ryan and $7,092.89 for Sasha. The chart then shows Sasha's ledger reduced by half of the withheld amount ($2,507.96). In the end, both parties received $4,584.92 for the second quarter of 2024, under the court's reckoning.

By contrast, Ryan's chart shows both parties bear responsibility for the Microsoft withholding before splitting the net amount. His chart then goes one step further and requires Sasha to pay him $2,507.97 (half of the Microsoft withholding). That additional deduction—which is not included in the district court's chart—leaves Sasha with only $2,076.96 in proceeds. Under Ryan's calculations, the parties do not receive equal allocations.

As Sasha contends, the district court's ruling contains contradictions. And when the court denied Sasha's second rule 1.904(2) motion, it declined to clarify its ruling. Ryan interprets that as an endorsement of the process Sasha contested in her first rule 1.904(2) motion. We disagree. The district court stated in its first rule 1.904(2) ruling that "the parties are receiving one-half of the stock proceeds after each pays one-half of the state and federal taxes." And the district court's chart illustrates an equal division; its final row, captioned "Total Proceeds Allocated by Decree," shows Ryan and Sasha each receiving $4,584.92. Regardless of the court's reference to Ryan's chart, its ruling carries out the intent of the decree by awarding Sasha half the stock proceeds and accounting for her responsibility for half the taxes.[2]

While the decretal court intended the parties to split the taxes and proceeds down the middle, the process set out in the contempt ruling does not achieve that equal division. Instead, a division of the *net* proceeds

---

[2] Based on our reading of the record, the district court's chart does not accurately demonstrate the *flow* of cash. The district court shows the stocks being split between Ryan and Sasha before Microsoft withholds for taxes. In reality, Microsoft withholds stock from the start. After this withholding, Microsoft gives the remaining stocks to Ryan. He then sells those stocks and splits the proceeds with Sasha. So, Ryan and Sasha split the net proceeds, and both bear equal tax liability as to the withheld stocks. But regardless of how the district court charted out the process, the court's end result was clear: the parties receive equal distributions.

accurately reflects an equal division of taxes and proceeds. Because Microsoft already withholds stocks to account for income taxation before depositing stocks with Ryan, both parties' shares of income taxes are deducted from the distribution. As Sasha asserts, requiring her to then pay half of the withholding to Ryan results in double taxation.

Ryan pushes back. This is his argument: "if there is no equalization from Sasha, Ryan is the one who walks away at a disadvantage because he would have paid all of the tax associated with the vesting stock, and capital gains from selling Sasha's portion of the stock per her request." We understand that there may be taxes owed on the sale of stocks beyond what Microsoft withholds. These additional taxes depend on any capital gain or loss on the stocks between the time Ryan received the stocks and the time he sells the stocks. But neither party argues that the decree addressed capital gains taxes on the vested stock awards. In fact, Sasha offered a "true-up" mechanism to account for potential discrepancies at year's end, but the court did not include it in the decree. And during the contempt proceedings, the district court declined to account for capital gains because any change within the ten days to sell would have been minimal. We find no error in that aspect of the court's analysis.

As our bottom line, we reverse the district court's finding that Sasha was in default of the provisions in the dissolution decree. We remand with directions for the district court to implement a distribution process where Sasha and Ryan equally split the net proceeds from the sale of the vested Microsoft stock—as envisioned in the decree. This process should include both past and future stock distributions.

## VI.  Appellate Attorney Fees

Both parties request appellate attorney fees. Although the district court did not find either party in contempt, we still have authority under Iowa Code section 598.24 (2024) to award attorney fees from a finding of default. *See Anderson*, 451 N.W.2d at 189–90 (reading statute to allow award of attorney fees if the court makes a finding of contempt *or* default). Whether to award those fees rests in our discretion. *See Okland*, 699 N.W.2d at 270. We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)).

Considering the meritorious nature of Sasha's appeal, her financial need, and Ryan's greater ability to pay, we find an award of $14,000 in appellate attorney fees to Sasha is reasonable.

**REVERSED AND REMANDED WITH DIRECTIONS.**