# IN THE COURT OF APPEALS OF IOWA

No. 19-0422
Filed November 30, 2020

**IN RE THE MARRIAGE OF HEATHER NICOLE BINGAMAN
AND ARNOLD JASON BINGAMAN**

**Upon the Petition of
HEATHER NICOLE BINGAMAN,**
       Petitioner-Appellee,

**And Concerning
ARNOLD JASON BINGAMAN,**
       Respondent-Appellant.

_____

       Appeal from the Iowa District Court for Dallas County, Michael Jacobsen,

Judge.


       Arnold Bingaman appeals the decree dissolving his marriage to Heather

Bingaman.  **AFFIRMED.**


       Anjela A. Shutts and Tyler L. Coe of Whitfield & Eddy, P.L.C., Des Moines,

for appellant.

       Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


       Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**MULLINS, Judge.**

Arnold Bingaman appeals certain provisions of the decree dissolving his marriage to Heather Bingaman. Arnold argues the incomes of both parties were miscalculated for child- and spousal-support purposes, the district court miscalculated the value of allegedly dissipated assets, and he should not have been required to pay past-due taxes. Heather requests an award of appellate attorney fees.

## I.     Background Facts and Proceedings

Arnold and Heather Bingaman were married in November 2000. The couple shares four children. Arnold owns and operates his own business. Heather worked outside the home prior to March 2008, but has not been employed outside the home since that time. Heather filed for dissolution in September 2017. The district court adopted a stipulation between the parties regarding custody of the children. The district court imputed the parties' incomes as $36,000.00 for Heather and $200,000.00 for Arnold "for the purposes of child support." Arnold was awarded the parties' marital home, lake property, and rental property. Heather was awarded the family farm.

After the district court's decree was filed, Arnold filed a motion to reconsider, enlarge or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). The court reaffirmed its findings on the imputed income of each party but reduced Arnold's income and increased Heather's income by the amount of spousal support and modified the child-support award. The district court also reaffirmed its finding that Arnold was in contempt for failing to maintain assets, accounts belonging to the children.

Both parties filed applications for rules to show cause following the district court's ruling on Arnold's 1.904(2) motion. Among other things, the district court was presented with evidence that Arnold failed to pay property taxes on the farm beginning in 2015. Heather was forced to pay the back taxes and penalties to redeem the property following entry of the dissolution decree. After a hearing on the applications, the district court issued the following ruling.

> Arnold, being in default of the Court's Order to Preserve Assets, shall pay to Heather one-half of the delinquent taxes and penalties Heather paid to redeem the farm. The delinquent taxes and penalties totaled $17,939.00. Therefore, Arnold shall pay Heather $8969.50 within sixty (60) days to satisfy his portion of the delinquent property taxes and penalties.

Arnold appeals and Heather requests appellate attorney fees.

## II.    Standard of Review

Dissolution proceedings are equitable in nature and are reviewed de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). "Although we give weight to the factual findings of the district court, we are not bound by them. But we will disturb a district court determination only when there has been a failure to do equity." *Id.* We give particular weight to a district court's determinations on witness credibility. *In re Marriage of Fox*, 559 N.W.2d 26, 28 (Iowa 1997).

## III.    Discussion

### A.    Income Calculations and Support

Arnold argues the district court miscalculated the incomes of both parties in awarding spousal and child support. He argues the spousal-support award failed to account for the income Heather would receive from the farm, the district court

ignored expert testimony regarding Heather's earning capacity, and the court miscalculated Arnold's income.

Iowa courts may award spousal support in dissolution proceedings after considering several factors. Iowa Code § 598.21A(1) (2017). Included among those factors is "the earning capacity of the party seeking maintenance." *Id.* § 598.21A(1)(e). Our supreme court is mindful of situations in which one spouse has been a homemaker because "the economic consequences of absence from the workplace can be substantial." *In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015). "In determining need, we focus on the earning capability of the spouses, not necessarily on actual income." *Id.* at 411. "In order to establish earning capability for persons without work experience or who are arguably unemployed, the parties may use vocational and other experts to assist the court in making a determination." *Id.*

Child support is calculated using the guidelines adopted by statute for the purpose of providing for the best interests of the children. Iowa Code § 598.21B; Iowa Ct. R. 9.3(1). There is a rebuttable presumption that application of the guidelines produces the correct amount of child support. Iowa Ct. R. 9.4. The first step in applying the guidelines is to determine the gross monthly income of each parent. Iowa Ct. R. 9.14(1). "'Gross monthly income' means reasonably expected income from all sources." Iowa Ct. R. 9.5(1).

The district court imputed $36,000.00 for Heather and calculated Arnold's income was $200,000.00 "for the purposes of child support."

> Spousal Support. Heather was awarded the Farm Property and the income associated with the farm. The [Conservative Reserve program (CRP)] and Rent Payments are not due until October, 2019.

The farm income from the CRP and Rent Payments are part of the property division and are not spousal support. Heather will be entering the workforce after a 10 year absence as a homemaker. Heather shall be awarded spousal support for a period of time to assist her in reentering the workforce and building up her experience and income to support herself. Arnold shall pay Heather $3,000.00 per month beginning January 1, 2019 through October 1, 2019. Beginning November 1, 2019 Arnold shall pay Heather $1,000.00 per month through October 1, 2021 at which time the spousal support payments shall terminate.

The court did not modify the spousal-support award following post-trial motions.

Child support was modified following post-trial motions. The decree filed in January 2019 failed to account for the spousal-support award and farm income that Heather would receive. Following Arnold's motion to enlarge, the court adjusted the incomes of both parties to reflect the spousal-support and property-division awards:

a. Child Support should be calculated using Arnold's Income of $65,000.00 in self-employment income (the three year average) and $135,000.00 taxable income (interest, dividends, rent, farm income, and the expenses paid by his business) not subject to self-employment taxes. Heather's income is $36,000.00. Arnold's income should be reduced by $36,000.00 annually to reflect spousal support paid to Heather. Heather's income is increased by $36,000.00 annually to reflect the receipt of child support.

b. Beginning October 1, 2019. Arnold's income is $65,000.00 in self-employment income and $90,529.00 in taxable income not subject to self-employment tax. Heather's income is $36,000.00 in employment income and $44,471.00 in taxable income (CRP payments, Rent Payment less real estate taxes and expected allowable expenses as reflected on the 2017 tax return). Arnold's income would need to be reduced $12,000.00 per year to reflect spousal support paid, and Heather's income would increase $12,000.00 per year to reflect spousal support received.

Arnold was ordered to pay child support at the monthly rate of $622.56 for four children beginning January 1, 2019. That rate reduced to $348.00 on October 1,

2019. The monthly rate will reduce further as children reach adulthood as follows: $311.51 for three children, $270.26 for two children, and $190.90 for one child.

In Heather's last year of employment in the insurance industry, she earned $46,357.00. Expert testimony regarding Heather's earning capacity ranged from $36,000.00 to $60,000.00 annually based on employment in that industry. In order to earn a higher income, she would need to obtain an insurance license. Heather testified she also considered becoming a substitute teacher or classroom worker to accommodate the children's schedules and avoid childcare costs. The district court noted "Heather's education level and prior experience in the insurance field would allow her to obtain employment with a higher income than working as a substitute teacher or paraprofessional. Many parents work fulltime and parent school age children."

Although she may have an earning capacity reaching $60,000.00 eventually, no evidence was presented that she would be able to reach that income level immediately upon entering the workforce. Furthermore, the language used in the court's award shows the court considered the farm income, Heather's expected reentry into the workforce, and expert testimony. The spousal-support award is limited in duration and reduces over time, as Heather's income from traditional employment is expected to increase. On our de novo review, we agree with the district court's calculation of Heather's income.

The district court specified its calculation of Arnold's income in the order on the motion to enlarge. The district court averaged Arnold's business income in 2015; and business, farm, and investment income in 2016 and 2017.[1]

$186,585.00
$214,409.87
+$230,319.03
$631,313.90 / 3 years = $210,437.97.

Arnold's average income was then reduced based on his testimony that his "2018 income would be less than previous years." The court reduced the average by $10,437.97, ultimately finding his income was $200,000.00. The record shows that Arnold received a traditional income from his company and more than $6000.00 per month for payment of expenses including insurance, gas, cell phone service, and other costs. Arnold's expert testified that by October 31, 2018, his income was $130,000.00 inclusive of all funds available to him through the business. Even though Heather would receive an equitable share of the parties' financial resources, we have no evidence that dividend payments from the Edward Jones investments would stop altogether. Arnold will also receive rental income from a property rented by his brother.

On our review of the record, we agree with the district court that Arnold's income was $200,000.00 per year for the purposes of spousal and child support through September 2019. We further find that in its ruling on the motion to amend, the court properly calculated support starting October 1, 2019, after expressly excluding farm income from Arnold and including farm income to Heather. We

---

[1] The records of Arnold's income were highly contested throughout proceedings. The calculation of his income in 2015 is limited to the business income because Arnold's 2015 tax return was not provided to the court.

further find the court's ruling concerning spousal support is equitable and supported by the evidence of Heather's transition back into the workforce.

B.    Asset Dissipation

Arnold argues the district court double counted certain assets in determining the amount awarded to Heather in the division of assets and liabilities. Heather argues the dissipation calculation and remedy are correct.

Dissipation of assets may be considered for an equitable distribution of property upon dissolution. *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). Courts employ a two-part test to determine whether assets have been dissipated, "(1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances." *Id.* (quoting Lee R. Russ, *Spouse's Dissipation of Marital Assets Prior to Divorce as Factor in Divorce Court's Determination of Property Division*, 41 A.L.R. 4th 416, 421 (1985)). In the first part, a court must ask "whether the spending spouse can show how the funds were spent or the property disposed of by testifying or producing receipts or similar evidence." *Id.* For the second part, courts consider factors including:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefitted the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Id.* (citations omitted). "Courts may also consider '[w]hether the dissipating party intended to hide, deplete, or divert the marital asset.'" *Id.* (quoting *Kondamuri v. Kondamuri*, 825 N.E.2d 939, 952 (Ind. Ct. App. 2006)). Debt acquired by one party

over several years may be classified in part as waste, and in other part legitimate expenses. *Id.* at 105–06. Debt classified as waste is set aside as debt for the spending party and is not considered in the distribution of property. *Id.* at 106.

The relevant assets are financial. The district court found as follows:

20. Arnold dissipated assets in violation of the court's order. Specifically dissipating the following assets totaling, $294,200.10:
    a. Charge reversals Scheels Credit Card $40,995.
    b. UTMA Accounts $3,462.00 × 3 = 10,386.00.
    c. CRP Payments in the amount of $47,291.00.
    d. Cash Rent Payments in the amount of $5,035.00.
    e. Wells Fargo Checking $62,000.00.
    f. Two checks from safe $34,141.10.[2]
    g. Edward Jones [ ] $94,352.00.

Arnold initially argues the Scheels credit card debt in the name of his business was counted twice—once as debt set aside to Heather and again as a dissipated asset awarded to Arnold. Arnold argues this is in violation of the rule set out in *Fennelly*. *See id.* At first glance, the debt does appear twice in the property division. However, the facts of this case are distinguishable. In *Fennelly*, the debt was acquired by the husband and was partially waste and partially legitimate, and the part that was waste was awarded to the husband. *Id.* at 105–06. Here, Heather incurred $40,995.00 of marital debt using the Scheels card and paid it using marital funds, a practice that had been a pattern during the last several years of the marriage. Arnold, unhappy with her charges, convinced the credit card company the charges on the business credit card were fraudulent and convinced it to reverse all payments as allegedly fraudulent. She was then

---

[2] Arnold did not raise an argument regarding the two checks from the safe in his brief; he merely deemed the district court's finding erroneous. Without further development and reference to supporting legal authority, we deem argument on the asset waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

required to pay that debt herself, while Arnold's business account was refunded the entire amount. In fact, Arnold testified it covered costs of personal expenses and softball equipment. The district court ordered Heather to pay the credit card debt, and found the amount the credit card company had refunded to Arnold had been dissipated by him. The district court did not count this debt twice, as argued by Arnold. Instead, it made an equitable distribution by ordering that the dissipated credit card refund was awarded to Arnold, while Heather was assigned the debt.

Arnold argues the UMTA funds were not dissipated because they were used to pay for a family vacation, which was a customary pre-dissolution activity for the family. He argues the history of family vacations should have led the district court to find the UMTA funds were not dissipated. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 702–03 (Iowa 2013). Arnold produced records that the accounts were closed and testified he used the funds to pay for a spring break vacation in the spring of 2018 but did not provide any documentation to corroborate his testimony. The district court ordered the parties to maintain the funds in the UMTA accounts on September 8, 2017. Arnold then closed the accounts on October 31, 2017, alleging he needed the funds to pay for a new furnace for the home. He then used the funds for the 2018 spring break vacation and had not reopened and reimbursed the accounts by the time of trial. In the absence of any receipts or bank records, Arnold's inconsistent statements over time about how the funds were spent and his intent, or lack thereof, to reimburse the accounts raise questions about the credibility of his testimony on this issue. Arnold has not met his burden to demonstrate how the funds were spent. *See Fennelly*, 737 N.W.2d at 104. Even if the vacation was a customary practice for the family and necessary

for the mental health and wellbeing of the children, Arnold violated the court order when he used the UMTA funds following the district court's order for maintenance.

Arnold also argues the CRP payments and cash rent were counted twice in error. Arnold testified the CRP payments were deposited in part into a farm account and would be used to pay taxes on the farm. He testified that remaining CRP funds were used to pay other farm expenses. But, in his brief on appeal, Arnold argues the payments and rent were put into an account at the University of Iowa Credit Union and are fully accounted for. However, following the dissolution, Heather learned that property taxes had not been paid on the farm since 2015 and was forced to pay $17,939.00 to redeem the property. Arnold properly argues that funds must be accounted for to satisfy the evidentiary prong of the dissipation test. *See id.* In this case, the record contains evidence that the majority of the CRP funds were deposited into University of Iowa Credit Union Account. The account records end with entries on November 30, 2018, and do not show how the funds were spent. Furthermore, even though Arnold testified the CRP funds would be used to pay property taxes on the farm, they obviously were not. Moreover, the record shows Arnold deposited only $32,000.00 out of $47,291.00 in CRP payments and $5035.00 in cash rent. Because there is no record of the remaining funds, Arnold has not carried his burden to show his expenditures and satisfy the evidentiary prong. *See id.*

Arnold argues the district court improperly found he dissipated $62,000.00 from Wells Fargo accounts, insisting $47,000.00 of that sum was actually cash in the safe that the district found was not dissipated and the remaining $15,000.00 was used to construct a building for his business. Arnold testified he withdrew a

total of $62,000.00 from his Wells Fargo checking account in August 2017. He testified both that he had no record of where the money went and that $30,000.00 was used to purchase a cashier's check that was eventually cashed by Arnold. On cross-examination, Arnold indicated a photo of his personal safe was the only documentation that he was able to produce regarding the portion that was cashed and placed in his safe. There is nothing in the record, other than Arnold's testimony, to prove how the $62,000.00 was spent. Arnold's testimony was inconsistent and did not account for the entire sum withdrawn in August 2017. Arnold has not met his burden to satisfy the evidentiary prong. *See id.*

Arnold argues the district court also erroneously found more than $94,000.00 transferred from his Edward Jones account to his business account at Wells Fargo was dissipated. When asked about funds transferred from the Edward Jones account on August 24 and September 1, 2017, Arnold testified he needed the funds for business purposes.

> Because Heather was frauding money from my business account into her personal Scheels account that I had nothing to do with. . . .
> But I needed money to pa[y] for materials and contractors and run a business, and I moved all . . . of the money out of there and close the Edward Jones account down and operate there.

Assuming the transfer of funds from Edward Jones accounts to the Wells Fargo business accounts was a customary practice for the couple, Arnold still needs to show how the money from Edward Jones was spent on "legitimate household and business expenses." *See id.* at 106. The record shows the funds were transferred into an account at Wells Fargo. However, there is no complete record of how the funds were spent. Arnold's argument the record shows the funds were "transferred into the Wells Fargo business account *to be used* for legitimate business

expenses" misses the mark. Furthermore, Arnold places the burden of showing how the funds were spent on Heather. In fact, after Heather identified the assets allegedly dissipated, the burden shifted to Arnold to meet the two-prong test pronounced in *Fennelly*. *See Kimbro*, 826 N.W.2d at 701. Arnold has failed to meet his burden. *See Fennelly*, 737 N.W.2d at 104.

C.      Past-Due Taxes

Pursuant to the dissolution decree, Heather was awarded the Union County farm "free and clear of any claim of Arnold." She became solely responsible for taxes but quickly discovered the property taxes had not been paid since 2015. The property was sold at a tax sale in June 2017. Heather redeemed the property in March 2019 for $20,748.00, including $17,939.00 in back taxes. In July 2019, the district court held a hearing on applications for rule to show cause from both parties. In its order following the hearing, the district court found both parties were responsible for and aware of the duty to pay property taxes. The parties had a practice of Arnold telling Heather when to write the check from the farm checking account. "Arnold and/or Heather failed to notify the Union County Treasurer of a current address which led to notices of delinquency not being received by them. The Union County Farm was a hotly contested asset during the dissolution of marriage action and each party desired to be awarded the farm." Although there was no contempt finding, Arnold was found in default of the order to preserve assets filed in September 2017. He was ordered to pay Heather $8969.50, half the delinquent taxes and penalties. Arnold appeals, arguing the order to preserve assets was not extant during the time the taxes were delinquent and penalties accrued.

"Our standard of review in contempt actions appears somewhat unique. If there has been a finding of contempt, we review the evidence to assure ourselves that the district court's findings are supported by substantial evidence. The district court's legal conclusions are reviewed for errors of law." *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995). "A different standard of review exists on appeals from the trial court's refusal to hold a party in contempt under a statute that allows the trial court some discretion." *Id.* at 327. "The trial court here had broad discretion and 'unless this discretion is grossly abused, the [trial court's] decision must stand." *Id.*

Iowa Code section 598.23(1) gives a district court discretion to determine whether a party is in contempt and impose a remedy. "If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt . . . ." Iowa Code § 598.23(1). Thus, we will review the facts of this case to determine whether the district court grossly abused its discretion. *Swan*, 320 N.W.2d at 327. "It is possible for a party to be in default of an obligation without being in contempt" if that party is in default of a court-ordered obligation. *Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 791–92 (Iowa Ct. App. 2008). The statutory language requires that an alleged contemnor must disobey "a temporary order or final decree" for punishment to be imposed pursuant to section 598.23. Iowa Code § 598.23(1).

The order to preserve assets filed in September 2017 specifically barred both parties from "selling, giving away, encumbering, destroying, removing from the family home, or in any other manner disposing of any personal or real property" without prior permission of the district court. Failing to pay property taxes, and

thus subjecting the farm to tax sale, falls within the realm of the order to preserve assets. The property was held jointly and titled in both parties' names. Thus, even though the order to preserve assets was not filed until 2017, we find no gross abuse of discretion in the district court's findings that both parties were aware of their responsibility to pay the property taxes and that both parties were responsible for doing so. *See Swan*, 526 N.W.2d at 327. We find no gross abuse of discretion in the district court's order for Arnold to pay $8969.50, half the delinquent taxes to redeem the property, to Heather.

### D. Attorney Fees

Heather requests an award of appellate attorney fees.

> Appellate attorney fees are not a matter of right, but rest in [the appellate] court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). Heather's appellate counsel submitted an affidavit requesting $21,800.00 in appellate fees. Heather has been unemployed for several years and was successful on appeal. At this time, Heather receives spousal and child support and income from the Union County farm. Accordingly, we award Heather $15,000.00 in attorney fees.

## IV. Conclusion

We affirm the district court's spousal- and child- support awards, finding the district court correctly calculated the parties' incomes. We also affirm the district court's calculation of assets Arnold dissipated and the default and remedy

regarding the Union County farm tax payments.  We award Heather $15,000.00 in appellate attorney fees.

**AFFIRMED.**