Fred John ABRAHAM, Plaintiff,

v.

The Honorable James L. BEEGHLY, District Court Judge of the First Judicial District of Iowa, Defendant,

Karyn (NMN) Abraham, Intervenor.

No. 84–231.

Court of Appeals of Iowa.

Dec. 26, 1984.

William C. Ball and H. Daniel Holm, Jr., of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for plaintiff.

David J. Dutton and Bruce Braley of Mosier, Thomas Beatty, Dutton, Braun & Staack, Waterloo, for intervenor.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Plaintiff challenges via certiorari the adverse judgment and sentence for a contempt arising out of a dissolution proceeding.

The marriage of plaintiff, Fred Abraham, and intervenor, Karyn Abraham, was dissolved on March 24, 1983. Under the dissolution decree Fred was awarded, inter alia, a 1976 Buick titled in his name and his interest in a corporation owned jointly with his two brothers. Karyn was awarded, inter alia, "all of the assets of the Snooty Fox Boutique, subject to the accounts payable and notes payable which are directly attributable to said business, which [Karyn] shall be obligated to pay." The boutique was operated as a division of the corporation. The decree also provided a schedule for payment of property settlement sums to Karyn by Fred. After listing the payment schedule the decree states: "To secure the payment of said sums,

[Fred] ... shall not participate in his individual capacity or as a stockholder, officer, director or employee of F & R Enterprises, Inc., in any transaction which reasonably appears to be designed or may defeat [Karyn's] rights to receive the payments set forth above."

The corporation experienced financial difficulties and was indebted to the bank for approximately $170,000. The various notes of the corporation had been consolidated, but it is agreed that $17,500 of that debt was attributable to the boutique. On October 20, 1983, a special meeting of the corporate directors was held. A motion was presented to designate Fred and his brother Ron as authorized check signers on the boutique account. The motion carried by two votes with Fred abstaining. Ron then removed $9,100 from the boutique checking account and applied it directly to the corporate debt.

Fred fell behind in making the payments ordered in the property division portion of the decree. Karyn caused a writ of execution to be issued against him on September 30, 1983. On November 4, 1983, Fred transferred his 1976 Buick to the corporation. It appears that the execution did not include the car.

■ Certiorari is an action at law testing the legality of an action taken by the district court. *Callenius v. Blair,* 309 N.W.2d 415, 419 (Iowa 1981). Our review is not de novo. *Id.* We examine the evidence to ensure that proof of contempt is clear and satisfactory, since a judgment of contempt is quasi-criminal in nature. *Id. See also Wilson v. Fenton,* 312 N.W.2d 524, 527 (Iowa 1981). The contempt adjudication cannot stand unless there is substantial support for the findings of the district court. *Rausch v. Rausch,* 314 N.W.2d 172, 174 (Iowa Ct.App.1981).

■ Not every violation of a court order will sustain a finding of contempt; it must be shown that there was a willful disobedience. *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980). To establish the requisite willfulness there must be "evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Id.*

### I. Boutique Bank Account

Defendant district court found that plaintiff had willfully violated the terms of the dissolution decree and was therefore in contempt pursuant to Iowa Code section 598.23. We do not agree.

■ The evidence showed that Ron Abraham heard that Karyn was planning to liquidate the assets of the boutique and move to Wisconsin. Since she had never assumed the $17,500 debt he was afraid she would leave without paying it and thereby harm the corporation. He inquired at the bank about the boutique checking account and was told he could not remove any of the funds without a corporate resolution. Ron then called a directors' meeting and moved that he and Fred be authorized to withdraw funds from the boutique account. Although Fred was present at the meeting he abstained from voting on the motion. The motion carried with two votes in its favor. Furthermore, Ron testified that Fred had on a number of occasions indicated that he could take no action regarding the boutique. We do not find clear and satisfactory evidence that Fred participated in the corporate interference with the boutique account.

■ Moreover, even if Fred did participate we conclude that his actions were not clearly a violation of the decree. The district court found that the withdrawal of boutique funds violated that portion of the decree awarding assets of the boutique to Karyn. The decree also obligated Karyn to pay notes directly attributable to the business. The evidence indicates that the money withdrawn from the account was applied to the $17,500 indebtedness attributable to the boutique. We do not condone the corporate decision since the management of the funds should have been left to Karyn.

However, since the actions were in a sense in accord with the decree we conclude they were not sufficient to justify a finding of contempt.

 Kayrn argues that Fred's actions violated the language of the decree preventing him from using his corporate office to defeat her right to payments ordered pursuant to the property division. The language specifically refers to the payment schedule set forth by the court in the same paragraph of the decree. Since the corporate action in this case had nothing to do with those payments, that language of the decree is inapplicable and cannot sustain a finding of contempt.

## II. Automobile

 The district court also found plaintiff in contempt for transferring his 1976 Buick to the corporation. The court concluded this was an attempt to secrete assets to prevent execution upon them. *See* Iowa Code § 598.23.

Both Fred and Ron testified that it was understood ever since 1976 when the business was incorporated that both of them would transfer their personal cars to the corporation. Ron testified that he had transferred his car and assumed that Fred had done the same. Fred testified that he had intended to do so but had not been able to get the car to pass a vehicle inspection necessary to make the transfer. Ron testified that he had driven the car as a company car for two years.

Fred also testified that the 1976 Buick was not listed on the writ of execution as one of the assets to be levied upon. He stated that his 1967 Buick was listed and that he told the sheriff that car was stored at a garage because it was not running.

The district court made the following findings of fact with respect to the car:

The court also finds that writ of execution was issued pursuant to Dictation to Sheriff dated September 30, 1983, and pursuant thereto the Sheriff attempted to levy on certain property, *including a 1976 Buick,* a 1967 Buick,.... All but

the 1976 Buick were levied upon by the Sheriff, and the Respondent answered that these assets were not currently in his possession. From the testimony, it appears that the 1967 Buick had been delivered to a garage for possible repairs, and was not operable, ... (emphasis added).

The evidence in the record does not support this finding. We conclude that the evidence does not clearly show that the transfer of the car was a secretion of assets.

## III. Attorney's Fees in Certiorari

Karyn has requested pursuant to Iowa Code section 598.24 an award of attorney's fees to cover the cost of intervening in this certiorari action. In view of our disposition of the case the request is denied.

WRIT SUSTAINED.