# IN THE COURT OF APPEALS OF IOWA

No. 24-1825
Filed November 13, 2025

**IN RE THE MARRIAGE OF TODD LELAND SWALIN
AND AMY JO SWALIN**

**Upon the Petition of
TODD LELAND SWALIN,**
    Petitioner-Appellant,

**And Concerning
AMY JO SWALIN,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Wright County, DeDra Schroeder, Judge.

A father appeals the modification of a marriage dissolution decree granting physical care to the mother and dismissing his contempt application. **AFFIRMED**.

Dani L. Eisentrager, Eagle Grove, for appellant.

Robb D. Goedicke of Neighborhood Law Group of Iowa, P.C., West Des Moines, for appellee.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

Because the district court awarded Amy Swalin physical care of the parties' two children in this modification of custody action, Todd Swalin appeals. The district court also considered and denied Todd's application for contempt of the court's orders against Amy. On appeal, Todd claims the district court erred in (1) not awarding physical care of the children to him, and (2) not finding Amy in contempt. Each party requests appellate attorney fees. We affirm the district court's decisions.

**I. Background Facts and Prior Proceedings.**

Todd and Amy divorced in September 2020, and their stipulation and parenting agreement, incorporated in the decree of dissolution of marriage, provided for joint custody and joint physical care of their children, T.S.[1] (born 2015) and R.S. (born 2018). At the time of their divorce, Amy and Todd resided in two towns about fifty minutes apart. Per their agreed parenting schedule, during the school year Todd would have custody of the children each weekend, alternating weekly between Thursday through Sunday one week and Friday through Sunday the next week. Amy's parenting time would resume on Monday. In the summer months while school was recessed, they alternated weeks. They agreed the children would attend school in Amy's town. Amy was responsible for transporting the children, including bringing them to Todd on Thursday evenings, picking them up for school Friday morning, returning them to Todd on Friday after school, and picking them up from Todd on Monday morning.

---

[1] Todd adopted T.S. when she was three years old.

Although the parenting agreement contained inspirational parenting goals, things did not always go smoothly. To address his concerns related to their parenting agreement, Todd filed an application for contempt in May 2021, and he made several amendments to this application. In September 2022, the district court found Amy in contempt of court for failing to deliver the children to Todd's home for his scheduled parenting time and for refusing to pay the children's medical bills. Todd was allowed seventeen days of makeup time with the children. From August 2021 until October 2022, three child abuse allegations were made against Todd to the Iowa Department of Health and Human Services; all allegations were unfounded. The parents did most of their communication through online parenting applications.

In August 2023, Todd applied to modify the custody order seeking physical care of the children. The same day Todd filed another contempt action, and he later amended it twice. Amy answered and counterclaimed, seeking the same result for herself. Both alleged a substantial change in circumstances since the entry of the decree and then stipulated to that finding before the modification trial.

At the August 2024 trial, Todd testified that he lives with his girlfriend Mindy, who he began dating in August 2021. Mindy has three children, and the couple have a daughter together. Mindy's eldest child visits them every other weekend. Her second eldest child resides in the home full-time, and her other child resides in the home half the time.

Todd holds a bachelor's degree and works at a factory and as a real estate agent and has stake in a farming operation and rental properties. His factory hours are 10:00 p.m. until 6:30 a.m. He testified that his real estate work has flexible

hours and the farming operation does not require a lot of his time. He claims no income from the rental properties or farming endeavor. Because he works overnight, T.S. and R.S. sleep while he is at work and Mindy stays home with them. Todd has described the relationship between Mindy and T.S. as a "challenge." Amy testified that R.S. "seems like she gets along [with Mindy], but [T.S.] says Mindy is not nice to her."

Amy testified that she lives with her common-law husband, Harley, their two children,[2] and T.S. and R.S. Amy's and Harley's relationship began in 2020. Because of the transportation required for the custody arrangement Amy could not work full time, so she ran an in-home daycare three days a week.

At trial Todd alleged several concerning behaviors of Amy. He was concerned about the children's attendance records at school and Amy's choices to keep the girls home from school or actions that caused them to be tardy. Todd also testified that he was concerned about Amy's drinking habits. On two occasions, she has been arrested for operating while intoxicated (OWI), thus Todd had concerns about her being intoxicated when picking up and dropping off the children from school. Amy denied these allegations, noting that on each charge, the children were not in the vehicle. And, the school principal, who walks T.S. to the car at pickup, testified to no observation of any concerning behaviors. Todd claimed Amy was intoxicated when talking to the children on the phone "on average maybe once, twice a month." As Todd testified, in June 2024, he received a video of Amy "highly intoxicated" arguing with staff at a restaurant and the police

_____

[2] At the time of trial Amy and Harley shared two children and Amy was pregnant with their third child.

were called. Amy contends that she was not intoxicated but she had reported the incident at the restaurant to police.

Todd and Amy disagreed about what activities the children should be involved in, particularly those that would conflict with Todd's parenting time. For example, Amy signed the girls up for dance classes that end at 6:00 p.m., when Todd's visitation was scheduled to start. Todd and Amy disputed who should have been responsible for transporting the girls from dance to Todd's home.

At trial both parties agreed there was sufficient change in circumstances for modification in that their previous parenting agreement was not working. As the district court noted "[i]t is not at all surprising that this arrangement was unsuccessful due to the distance between the parties' homes, the parties' inability to coparent effectively, and the parties' different personalities." After trial the district court denied Todd's application for contempt and awarded physical care to Amy. Todd appeals.

## II. Standard of Review.

Applications to modify custody orders lie in equity and are reviewed de novo. *Venechuk v. Landherr*, 20 N.W.3d 471, 475 (Iowa 2025). "While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020).

"If there has been a finding of contempt, we review the evidence to assure ourselves that the court's factual findings are supported by substantial evidence" and "[t]he district court's legal conclusions are reviewed for errors of law." *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995).

**III. Analysis.**

    **A. Modification.**

Todd argues that he was the superior parent and the district court erred in not awarding him physical care of the children.[3] We will not disturb the trial court's conclusions "unless there has been a failure to do equity." *In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995). As always, our top concern is the best interests of the children. Iowa R. App. P. 6.904(3)(n). To determine the best interests of the children we consider the factors in Iowa Code section 598.41(3) (2025), and the Iowa Supreme Court in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). In deciding which parent should be awarded physical care "the factors of continuity, stability, and approximation are entitled to considerable weight." *Id.* at 700. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 695.

As noted by the district court "[b]oth parents in this case have positives and negatives. [And it] is apparent that both parents love these children very much." We agree with this assessment. Still, Amy has primarily taken care of meeting the children's mental and physical needs; she takes them to school and is the parent who schedules doctor's and other appointments. There is no concern with Todd's

---

[3] Todd also claims the district court was biased against him due to his gender and that the court "took great efforts to include arbitrary findings about Todd that cannot be verified, specifically related to Todd's demeaner in the court room." We do not share Todd's sentiment that the district court showed bias toward him but instead believe the district court's findings included credibility observations that did not favor Todd.

ability to take care of the children, he simply has not been involved in the day to day care to the same degree as Amy. The district court stated that Todd "seemed unsure regarding the children's medication, dosage, schoolteachers, and other pertinent information that applies to the day-to-day care of the children." Also, Todd was less enthusiastic about the children's involvement in extracurricular activities as he felt the activities interfered with his parenting time. On his end, Todd emphasized legitimate concerns over Amy's OWI convictions, worrying that her behavior would be a safety risk for the children. At trial he testified that he had to drive T.S. to school because Amy arrived intoxicated. But, Amy denied she drove intoxicated with the children or placed them at risk.

Notably T.S. has a strained relationship with Mindy. It has been recommended that T.S. undergo trauma therapy that would ultimately involve Todd and Mindy as participants. T.S. has had some behavioral problems noted by Todd that appear to be "worse" when T.S. is interacting with Mindy. That strained relationship provides another best interest consideration that favors awarding Amy physical care.

As for the requirement that a parent support the other parent's relationship with the children, Todd's constant monitoring of the failures of Amy, that often included minor violations of the parenting plan, were not in the children's best interests. And while many of Todd's concerns related to missed parenting time when one child was sick, the district court noted that Todd did not offer to come get the other child. On top of that, the district court observed Todd during the trial, noting that Todd's "distain of [Amy] was apparent both in his demeanor at trial and in his communication with her in the exhibits and pleadings. [Todd's] facial

expressions when [Amy] testified and his tone when he testified and spoke of her was notable."

At trial Todd claimed that he is the more stable parent because he had "a little more of a routine" than Amy. The district court noted that Amy was more disorganized and often late taking the children to school and to their father's home, but even though that resulted in some parenting issues, the bottom-line was that her behavior did not impact the children negatively. The elementary school principal testified that "nothing stands out too much as an issue regarding the children's attendance or tardies." Todd also claimed that the children relocating to the school in his town would be a smooth transition because they know several people at that school, but that factor weighed equally with Amy. Stability is more than stringent routines. Amy has an established home for the children, and they attend school and extracurricular activities in the area. *See In re Marriage of Flibotte*, No. 09-0331, 2009 WL 5126114, at *4 (Iowa Ct. App. Dec. 30, 2009) (awarding physical care to a parent in part because "the children attend school in the area, and it is in their best interests that they continue in the same school").

After considering the above factors and on our de novo review, we determine Amy was properly granted physical care of the children. Because Amy has been primarily responsible for the children's physical care it would be best for the children for her to continue to do so. *See Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) (holding that "[s]tability and continuity tend to favor a spouse who, prior . . ., was primarily responsible for physical care"). Similarly, the factor of approximation favors Amy as she has handled the children's physical care. *Id.* at 697 (holding the approximation factor focuses on the "historic patterns of caregiving"). We

expect Amy to support Todd's relationship with the children as required under Iowa Code section 598.41(5)(b). We affirm the district court's award of physical care to Amy because it is in the best interests of the children.

## B. Contempt.

Todd argues the district court erred in not finding Amy in contempt. A trial court has broad discretion to decide whether to hold a party in contempt. *See Swan*, 526 N.W.2d at 327. When a trial court has not held a party in contempt, we will uphold the trial court decision "unless [that] discretion is grossly abused." *Id.* (citation omitted). Upon our review, we find that the trial court did not abuse its discretion in denying the contempt application.

The burden was on Todd to prove that Amy acted in contempt of the court's orders. He claimed that Amy willfully and deliberately, and with a wanton disregard, failed to drop off the children during his parenting time, including when the children were ill, or do so in a timely manner; and that she did not inform Todd about the children. As the district court noted "[n]ot every violation of a court order will sustain a finding of contempt; it must be shown that there was a willful disobedience." *Abraham v. Beeghly*, 363 N.W.2d 596, 598 (Iowa Ct. App. 1984). Willfulness is established with "evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Id.* (citation omitted).

The district court did not find Amy's actions to be willful disobedience. In response to Amy not traveling with ill children the district court found that "[c]hildren do not need to be transported to another parent's home 50 minutes in a car when

they are not feeling well." Amy did not separate the children when only one of them was sick, because the district court found "if [T.S.] is struggling with her relationship with her father and her father's significant other, it is not unreasonable to consider the child's needs that the children should go together on visitation with their father so that they also have each other as a support system." The district court considered Amy's actions to be in the best interests of the children and was not "convinced that [Amy] acted with an evil or bad purpose." Neither are we. We find the district court exercised appropriate discretion in not holding Amy in contempt.

### C. Appellate Attorney Fees.

Todd and Amy each ask us to award them appellate attorney fees. "Appellate attorney fees are awarded upon our discretion and are not a matter of right." *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). When deciding whether to exercise our discretion, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). We decline to award either party appellate attorney fees.

### IV. Conclusion

We affirm the district court's award of physical care to Amy because it is in the best interests of the children. The district court acted with appropriate discretion in not finding Amy in contempt. And we decline to award either party appellate attorney fees.

**AFFIRMED.**